

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00248-CV

GERI MERRY AND MIKE MERRY
APPELLANTS

V.

DIANA E. WILSON, M.D.,
NEUROSURGICAL & SPINE
CENTER, NORTH TEXAS
NEUROSURGICAL & SPINE
CENTER, AND TEXAS HEALTH
PHYSICIANS GROUP
APPELLEES

----------

## FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 048-274276-14

----------

## OPINION

----------

## I. Introduction

In two issues, Appellants Geri Merry and Mike Merry argue that the trial court abused its discretion by dismissing their health care liability claims for failure to file an expert report. We affirm.

## II. Factual and Procedural Background

Appellee Diana E. Wilson, M.D., performed surgery on Geri, first in 2008 and then again on June 21, 2012. In 2014, Geri and her husband Mike sued Dr. Wilson and the other appellees—the Neurosurgical & Spine Center, North Texas Neurosurgical & Spine Center, and Texas Health Physicians Group—alleging malpractice during the second procedure. Appellants did not file an expert report after the appellees answered. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (West Supp. 2015) (stating that in a health care liability claim, a claimant shall serve an expert report "not later than the 120th day after the date each defendant's original answer is filed"). Instead, on what would have been the expert report's due date, Appellants filed a first amended original petition, raising res ipsa loquitur, along with a "Notice of Filing of Chapter 74 Records," stating that the exhibits attached met the section 74.351 requirements "in regard to [Geri's] pleadings regarding the including, but not limited to issues of consent, lack of consent, *res ipsa loquiter* [sic], and negligence." Appellants also attached Geri's affidavit, in which she asserted that Dr. Wilson exceeded the scope of Geri's consent to the operation.

Appellees filed a motion to dismiss, arguing that none of Appellants' theories were exceptions to the expert report requirement and asking the trial court to dismiss all of Appellants' claims with prejudice and to award reasonable attorney's fees to Appellees.

2

Two months later, Appellants filed a second amended original petition in which they elaborated on their factual allegations but otherwise raised the same theory of res ipsa loquitur in support of their medical negligence claims based on lack of consent and Dr. Wilson's alleged acts and omissions during surgery. One day after filing their second amended original petition, Appellants filed a response to Appellees' motion to dismiss, arguing that res ipsa loquitur "obviate[d] [the] Chapter 74 expert report requirement" and alternatively requesting thirty days to cure any deficiencies. *But see* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c) (West Supp. 2015) (providing for one 30-day extension if the expert report has not been served because elements of the report are found deficient).

In their reply, Appellees argued that res ipsa loquitur did not obviate the need to comply with the statutory expert report requirements and urged the trial court to grant Appellees' motion to dismiss since Appellants had admitted that no report was produced. The trial court granted the motion to dismiss with prejudice and awarded to Appellees attorney's fees in the amount of $1,985.

### III. Discussion

In their two issues, Appellants argue that the trial court abused its discretion by granting Appellees' motion to dismiss because res ipsa loquitur is an exception to the expert report requirement. Appellants further assert that because the issue involves statutory interpretation, we should review their claims de novo.

Appellees respond that section 74.351's expert report requirement applies to *all* health care liability claims pursuant to both statutory interpretation and case law. Appellees also contend that Appellants' claims cannot be proven by res ipsa loquitur, but in light of our disposition of Appellants' first issue, we do not reach this argument. *See* Tex. R. App. P. 47.1.

## A. Standard of Review

The nature of the claims the legislature intended to include under chapter 74's umbrella is a matter of statutory construction, which is a legal question reviewed de novo. *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012); *Chesser v. Lifecare Mgmt. Servs., L.L.C.*, 356 S.W.3d 613, 619 (Tex. App.—Fort Worth 2011, pet. denied).[1] But a trial court's decision to grant a motion to dismiss under section 74.351 is reviewed for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001); *Farishta v. Tenet Healthsystem Hosps. Dallas, Inc.*, 224 S.W.3d 448, 452 (Tex. App.—Fort Worth 2007, no pet.); *see also Samlowski v. Wooten*, 332 S.W.3d 404, 411 (Tex. 2011) ("The overriding principle guiding trial court discretion under section 74.351(c) [30-day extension] . . . is the elimination of

---

[1]Our primary objective in statutory construction is to give effect to the legislature's intent. *Chesser*, 356 S.W.3d at 619. To do this, we look first and foremost to the statute's words and construe them according to their plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads to absurd results. *Id.* at 619–20. We also use definitions prescribed by the legislature and any technical or particular meanings the words have acquired, and we must read the statute as a whole and not just isolated portions. *Id.* at 620.

frivolous claims and the preservation of meritorious ones. An adequate expert report is how the statute distinguishes between the two."). Therefore, we will review the applicable statutory provisions de novo, but we will review the trial court's actions in applying that statute under the abuse of discretion standard. *See Lal v. Harris Methodist Fort Worth*, 230 S.W.3d 468, 472–73, 476 (Tex. App.—Fort Worth 2007, no pet.) (construing statutory provisions de novo before concluding that "[a]ppellant's failure to serve the expert report in a timely manner left the trial court with no discretion but to dismiss her claims with prejudice"); *see also Sheldon v. Unknown Nurse/Staff of Trinity Mother Frances Hosp.*, No. 06-10-00097-CV, 2011 WL 1990645, at *2 (Tex. App.—Texarkana May 18, 2011, pet. denied) (mem. op.) ("When deciding if a trial court abused its discretion, we review de novo all issues of law based on statutory interpretation."); *cf. Ctr. for Neurological Disorders, P.A. v. George*, 261 S.W.3d 285, 291 (Tex. App.—Fort Worth 2008, pet. denied) ("[A]bsent any controlling authority applying a de novo standard, we review a trial court's determination as to the adequacy of an expert report under section 74.351 for abuse of discretion.").

## B. Issue of First Impression

Although we have flirted with this question for more than a decade, the issue of whether res ipsa loquitur presents an exception to chapter 74's expert report requirement has not been directly addressed by this court. *Compare Tex. Back Inst., P.A. v. Peters*, No. 02-08-00417-CV, 2009 WL 5064546, at *6 (Tex.

5

App.—Fort Worth Dec. 23, 2009, pet. denied) (mem. op.),[2] *and Gurkoff v. Jersak*,

No. 02-07-00101-CV, 2008 WL 1700126, at *1, *5 (Tex. App.—Fort Worth Apr.

10, 2008) (mem. op.), *pet. denied*, 278 S.W.3d 776 (Tex. 2009),[3] *with Roughley*

---

[2]In *Texas Back Institute*, the appellant argued both that the physician who authored the expert report was not qualified and that res ipsa loquitur did not provide an exception to the expert report requirement. Because we found that the expert was qualified, we did not reach the appellant's res ipsa loquitur point. 2009 WL 5064546, at *6.

[3]In *Gurkoff*, we neared the issue in a case where a plaintiff, after having argued to the trial court that the doctrine of res ipsa loquitur obviated her need to file an expert report, died prior to dismissal of her medical malpractice claim under former article 4590i, section 13.01(a). 2008 WL 1700126, at *1, *5; *see* Act of May 1, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(a), 1995 Tex. Gen. Laws 985, 985–86 (requiring that within 90 days of filing the claim, the claimant must file an expert report for each physician or health care provider if no bond was filed and that no later than 180 days after filing, the claimant must file one or more expert reports with a curriculum vitae of each expert or voluntarily nonsuit the action), *amended by* Act of June 1, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875, Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590, *and* Act of May 22, 2013, 83rd Leg., R.S., ch. 870, § 2, 2013 Tex. Sess. Law Serv. 2220, 2220 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351).

In this single-issue case—limited to the question of whether the trial court abused its discretion in denying a doctor's request that attorney's fees be assessed against the deceased plaintiff's former attorneys—we observed,

> In the trial court, [Jersak's] attorneys argued that the doctrine of res ipsa loquitur obviated the need to file an expert report under article 4590i [now section 74.351]. The trial court took this argument seriously enough to grant [Jersak's] motion for reconsideration. [Jersak] died before the trial court issued another ruling, and much of the delay and procedural wrangling that followed was related more to her death than her attorneys' failure to file an expert report. And it was not until July 2005—ten months after the trial court granted [Jersak's] motion for reconsideration and nine months after her death—that *the supreme court held that healthcare liability claimants must comply with 4590i's expert-report requirement even in cases*

6

*v. Tex. Tech Univ. Health Sci. Ctr.*, No. 02-08-00222-CV, 2009 WL 161069, at *1

& n.3, *2 (Tex. App.—Fort Worth Jan. 22, 2009, no pet.) (mem. op.),[4] *Shelton v.*

---

> *where expert testimony is not required to establish liability at trial, as in cases where res ipsa loquitur applies.*

*Gurkoff,* 2008 WL 1700126, at *5 (citing *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005)) (emphasis added).

Because our comment regarding res ipsa loquitur was not part of the holding of this case, it is not authority for this proposition. *See Gowin v. Gowin*, 264 S.W. 529, 539–40 (Tex. Civ. App.—Fort Worth 1924) (stating that for a court's utterances to be binding and authoritative, they "must be asserted in the determination of some question necessarily involved in the case[;] [w]here, in the decision of the cause, an opinion is expressed which is not necessary to the decision of the cause, it is obiter dicta"), *aff'd,* 292 S.W. 211 (Tex. Comm'n App. 1927). And, while we will discuss *Murphy* below because it is instructive in our analysis in this case, we note here that *Murphy* did not expressly address the issue of res ipsa loquitur. Indeed, the words "res ipsa loquitur" appear nowhere in the opinion. *Murphy* addressed a cause of action for battery in the context of medical treatment, a particular circumstance in which the supreme court held "a factfinder might reasonably conclude . . . that some damages were sustained without the need for expert testimony." 167 S.W.3d at 838.

[4]In *Roughley*, an inmate-appellant suffering from chronic dermatitis argued that he was excused from the expert report requirement because "the causal connection between his injuries and [the medical provider's alleged negligence] is within the common knowledge of the lay person." 2009 WL 161069, at *1. In *Roughley*, we did not reach the issue of whether "common knowledge" provided an exception to the expert report requirement, taking issue instead with the appellant's assumption that the alleged causal connection would be commonly known by lay person and explaining,

> Roughley's "common knowledge" argument is primarily focused on his contention that TTUHSC negligently failed to medically restrict his exposure to certain cleaning solutions. Roughley notes that the packaging for the solutions contained warning labels, which would alert a lay person to the dangers involved in using those chemicals. The relevant inquiry, however, in this medical negligence case is not whether a lay person would know that the cleaning solutions contain dangerous chemicals. The

7

*Sargent*, 144 S.W.3d 113, 120–21 (Tex. App.—Fort Worth 2004, pet. denied),[5]

*and Martin v. Petta*, 694 S.W.2d 233, 240 (Tex. App.—Fort Worth 1985, writ ref'd

n.r.e.).[6]  Therefore, this issue presents a question of first impression in this court.

---

> relevant inquiry is whether it was medically necessary to order a person with a certain type of skin condition to avoid certain cleaning solutions.  This is not a matter within the common knowledge of the lay person.

*Id.* at *1–2.

[5]In *Shelton*, the appellants, whose medical negligence claims were disposed of by summary judgment, argued in part that even though their expert's affidavit had been struck, the trial court erred by granting summary judgment because res ipsa loquitur and the "basic and obvious" nature of the appellees' negligence made expert testimony unnecessary.  144 S.W.3d at 117, 120.  In holding that generally issues of medical negligence and causation require expert testimony, we analyzed how res ipsa loquitur had been applied in other malpractice cases before concluding that the doctrine did not apply to the appellants' case because the "proper performance of cancer-diagnosing procedures" was not a matter commonly known.  *Id.* at 120–21.  We also noted that res ipsa loquitur "is merely a rule of evidence by which a jury may infer negligence," and we did not directly address the expert report requirement in what was then article 4590i, section 13.01(a).  *Id.* at 121; *see* Act of May 1, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(a), 1995 Tex. Gen. Laws 985, 985–86 (amended 2003, 2005, and 2013) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351).

[6]In *Martin*, after holding that some medical experts' affidavits were incompetent to support the defendant doctor's summary judgment, we went on to hold that the underlying claim—that the patient had received a broken toe while undergoing hemorrhoid surgery—would also invoke the doctrine of res ipsa loquitur.  694 S.W.2d at 238–40.  However, *Martin* was decided long before the expert report requirement became part of what is now chapter 74.  *See id.* at 234–35 (observing that operative facts occurred in 1979); *cf.* Senate Committee on Economic Development, Bill Analysis, Tex. C.S.H.B. 971, 74th Leg., R.S. (1995) (explaining imposition of new requirements because "[m]edical liability lawsuits are often frivolous"; bill amended section 13.01 of article 4590i to require that an expert report be filed within 90 days of the claim being filed for each physician or health care provider with respect to whom a cost bond had not been

## 1.  Chapter 74

A "health care liability claim" under chapter 74 is defined, in pertinent part, as

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem. Code Ann. § 74.001(13) (West Supp. 2015).  Section 74.351(a) provides that in a health care liability claim,

> a claimant shall, not later than the 120th day after the date each defendant's original answer is filed, serve on that party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. . . .  Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the later of the 21st day after the date the report is served or the 21st day after the date the defendant's answer is filed, failing which all objections are waived.

*Id.* § 74.351(a).  If the expert report is not served, then the court, on the motion of the affected physician or health care provider "shall," subject to the trial court's discretion to grant a single 30-day extension to cure a deficient report, dismiss the claim with prejudice and award the reasonable attorney's fees and court

---

filed and requiring expert report to be furnished to counsel for each physician or health care provider, with a curriculum vitae of each expert listed in the report, by the 180th day after the date on which "a health care liability is filed"), *available at* http://www.lrl.state.tx.us/scanned/srcBillAnalyses/74-0/HB971.pdf   (last   visited June 24, 2016).

costs incurred by the affected physician or health care provider.  *Id.* § 74.351(b).

Under subsection (k) of section 74.351, the expert report is not admissible in evidence by any party unless the claimant uses it for a purpose other than compliance with subsection (a).  *Id.* § 74.351(k), (t).

As we have previously explained with regard to the expert-report requirement,

> [T]he report has a two-fold purpose: (1) to inform the defendant of the specific conduct that the plaintiff has called into question, and (2) to provide a basis for the trial court to conclude that the plaintiff's claims have merit.  Further, "while the expert report does not need to marshal all the evidence necessary to establish causation at trial, it must contain sufficiently specific information to demonstrate causation beyond mere conjecture."
>
> Likewise, the purpose of requiring such a report is clearly to eliminate frivolous claims, akin to meritless claims being eliminated by summary judgment motions.  Moreover, a plaintiff need not present evidence in the report as if it were actually litigating the merits.  The report can be informal in that the information in the report does not have to meet the same requirement as the evidence offered in a summary judgment proceeding or at trial.

*Farishta*, 224 S.W.3d at 453 (citations omitted).

### 2.  Res Ipsa Loquitur

Section 74.201, "Application of Res Ipsa Loquitur," states, "The common law doctrine of res ipsa loquitur shall only apply to health care liability claims against health care providers or physicians in those cases to which it has been applied by the appellate courts of this state as of August 29, 1977."  Tex. Civ. Prac. & Rem. Code Ann. § 74.201 (West 2011).  Appellants argue that this provision conflicts with requiring an expert report in a res ipsa loquitur case and

10

contend that "[c]ase law is not clear about what is res ipsa and what is not, when it occurs and when it doesn't and Geri requests that this Court review the purpose and the law of Res Ipsa Loquitur."

As explained by the supreme court, "[*r*]*es ipsa loquitur* is simply a rule of evidence by which negligence may be inferred by the jury." *Haddock v. Arnspiger*, 793 S.W.2d 948, 950 (Tex. 1990). Meaning "the thing speaks for itself," res ipsa loquitur allows circumstantial evidence in lieu of direct evidence to support a finding of negligence, but only when two factors are present: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence; and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant. *Id.*

In the medical malpractice context, section 74.201 further limits the application of this evidentiary rule to instances in which the rule has been applied in health care liability cases by Texas appellate courts as of August 29, 1977.[7]

---

[7]The original version of article 4590i included section 7.01, which restricted the application of res ipsa loquitur in medical malpractice cases as follows:

> The common-law doctrine of res ipsa loquitur shall only apply to health care liability claims against health care providers or physicians in those cases to which it has been applied by the appellate courts of this state *as of the effective date of this subchapter*.

Act of May 30, 1977, 65th Leg., R.S., ch. 817, sec. 7.01, 1977 Tex. Gen. Laws 2039, 2050 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.201) (emphasis added). The effective date of this legislation was August 29, 1977. *Id.*

11

But as a purely evidentiary rule, the application of res ipsa loquitur is not necessarily invoked in other provisions of chapter 74, such as section 74.351, which was designed to act as a gatekeeper in separating frivolous lawsuits from meritorious ones at the courthouse steps. In the context of a cause of action for battery during a medical procedure, the supreme court in *Murphy* explained the distinction:

> [The requirement for an expert report] *establishes a threshold over which a claimant must proceed to continue a lawsuit.* It does not establish a requirement for recovery. It may be that once discovery is complete and the case is tried, there is no need for expert testimony. In a case alleging lack of consent, a factfinder might reasonably conclude that there was a battery and that some damages were sustained without the need for expert testimony. But the [l]egislature envisioned that discovery and the ultimate determination of what issues are submitted to the factfinder should not go forward unless at least one expert has examined the case and opined as to the applicable standard of care, that it was breached, and that there is a causal relationship between the failure to meet the standard of care and the injury, harm, or damages claimed. The fact that in the final analysis, expert testimony may not be necessary to support a verdict does not mean the claim is not a health care liability claim. *A claim may be a health care liability claim*

Thirteen years later, the supreme court in *Haddock* identified those instances where res ipsa loquitur was applied in medical malpractice cases before August 29, 1977:

> Historically, *res ipsa loquitur* has been restrictively applied in medical malpractice cases. . . . However, an exception is recognized when the nature of the alleged malpractice and injuries are plainly within the common knowledge of laymen, requiring no expert testimony. Examples of this exception include negligence in the use of mechanical instruments, operating on the wrong portion of the body, or leaving surgical instruments or sponges within the body.

793 S.W.2d at 951.

*to which the damage caps and expert report requirements are applicable and yet not require expert testimony to prevail at trial.*

167 S.W.3d at 838–39 (emphasis added).

In *Murphy*, the supreme court reversed the intermediate appellate court's judgment, holding that because the patient's battery claim fell within the definition of a health care liability claim, an expert report was required in order to proceed with those claims. *Id.* And because she failed to provide such a report within the statutory period, the supreme court held that the trial court correctly dismissed her claims. *Id.* at 839.

Our sister courts that have addressed this issue have recognized this distinction in concluding that res ipsa loquitur is not an exception to the expert report requirement. *See Hector v. Christus Health Gulf Coast*, 175 S.W.3d 832, 839 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ("Other courts, including this one, have noted that even if *res ipsa loquitur* does apply to a certain [medical malpractice] case, an expert report or some form of expert testimony is still required."); *see also Sherman v. HealthSouth Specialty Hosp., Inc.*, 397 S.W.3d 869, 876 (Tex. App.—Dallas 2013, pet. denied) (stating that even if the res ipsa loquitur doctrine applied to Sherman's claims, section 74.351 still required her to file an expert report because the expert report requirement is a mandatory procedural threshold); *Sheldon*, 2011 WL 1990645, at *3 ("An allegation of res ipsa loquitur does not relieve a party of the responsibility to file an expert report under Chapter 74 of the Texas Civil Practice and Remedies Code."); *Bogar v.*

13

*Esparza*, 257 S.W.3d 354, 369 (Tex. App.—Austin 2008, no pet.) (op. on reh'g) ("Even assuming *res ipsa loquitur* applied in this case, this evidentiary presumption would not create an exception to section 74.351's expert report requirement."); *Haddad v. Marroquin*, Nos. 13-07-00014-CV, 13-07-00109-CV, 2007 WL 2429183, at *5 (Tex. App.—Corpus Christi Aug. 29, 2007, pet. denied) (mem. op.) ("[B]ecause res ipsa is an evidentiary rule, while the expert report is a threshold requirement to bringing a lawsuit, we conclude that the [l]egislature did not intend for section 74.201 to eliminate the procedural requirement of an expert report at the commencement of litigation."); *Garcia v. Marichalar*, 198 S.W.3d 250, 255 (Tex. App.—San Antonio 2006, no pet.) (stating same and relying on *Haddock* and *Hector*); *Belcher v. Scott & White Clinic*, No. 10-05-00324-CV, 2006 WL 2067981, at *2 n.1 (Tex. App.—Waco July 26, 2006, no pet.) (mem. op.) ("Even if *res ipsa loquitur* is applicable, an expert report or some form of expert testimony is still required.").

In drawing the distinction between res ipsa loquitur's status as an evidentiary rule and the procedural requirement of an expert report at the beginning of the litigation to show that a claim is not frivolous, we join our sister courts in holding that an expert report is still required regardless of whether res ipsa loquitur would apply at trial. Because the trial court therefore did not abuse its discretion by granting appellees' motion, we overrule Appellants' dispositive issue. *See Lal*, 230 S.W.3d at 476 ("Appellant's failure to serve the expert report

14

in a timely manner left the trial court with no discretion but to dismiss her claims with prejudice.").

## IV. Conclusion

Having overruled Appellants' dispositive issue, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and SUDDERTH, JJ.

DELIVERED:  June 30, 2016