

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| MARY LOU ORTIZ, JOANNE ORTIZ, AND JESUS ORTIZ, | § | No. 08-17-00042-CV |
| | § | |
| Appellants, | § | Appeal from |
| | § | 384th District Court |
| v. | § | of El Paso County, Texas |
| | § | |
| ST. TERESA NURSING AND REHABILITATION CENTER, LLC, | § | (TC # 2015DCV0662) |
| | § | |
| Appellee. | § | |
| | § | |

**O P I N I O N**

A nursing home filed suit to collect an unpaid bill from a former resident. The resident counterclaimed, asserting that the nursing home's substandard care resulted in her falling several times with resultant injury. The nursing home responded that the counterclaim was a "healthcare liability claim" which procedurally required the resident to file a timely expert report. The trial court agreed and based on the resident's failure to file an expert report, dismissed the counterclaim. The trial court also awarded attorney's fees against the resident's attorneys as a sanction for filing groundless pleadings. We affirm those rulings.

**BACKGROUND**

On December 13, 2013, Mary Lou Ortiz was admitted to St. Teresa Nursing and Rehabilitation Center (St. Teresa). Prior to admission, she had signed an admission agreement

that required her to pay any charges that were not reimbursed through any government assistance program available to her. Joanne Ortiz, Mary Lou's daughter, guaranteed the payment of those same charges. During the six-months that she resided at St. Teresa, Mary Lou incurred $7,450.00 in unreimbursed nursing care and supply charges. When she did not pay for those charges, St. Teresa sued both Mary Lou and Joanne Ortiz under breach of contract and quantum meruit theories.

Mary Lou, along with Joanne and Jesus Ortiz (identified as next of kin) answered and filed a counterclaim on April 20, 2015. The counterclaim alleged that St. Teresa allowed Mary Lou to "fall multiple times, because she was unattended and unsupervised" by the staff, resulting in "severe physical injuries and emotional, mental anguish to herself and her family." The counterclaim alleged St. Teresa breached the duty of care that a nursing home or long-term care facility would have owed under the same or similar circumstances. Specific acts of negligence included the failure to maintain a proper staff to resident ratio, failure to train the staff, and neglecting Mary Lou's care while it knew of "her medical need[s.]" Almost a year later, the Ortizes filed an amended counterclaim that added John and Jane Doe doctors, nurses, technicians, CNAs, and paramedic employees. The amended petition also fleshed out the factual allegations and the claims being asserted. The pleading asserts that Mary Lou, aged 72 on the date of her admission, had a medical history of Parkinson's, cognitive decline, and osteoporosis. On admission she also had stage three pressure sores. St. Teresa was to provide her appropriate physical and occupational therapy, as well as wound care, and monitor her for Parkinson's related behavioral issues. The amended petition details three separate falls while she was at the facility. The counterclaim alleges that St. Teresa owed several duties, including the duty to evaluate Mary Lou's risk for falling and implement a plan to prevent falls. The counterclaim further alleges that in contravention of the treatment plan, St. Teresa staff left Mary Lou unattended for "extended

2

periods of time while she was under their care." The counterclaim also asserted a negligence per se count premised on the violation of several administrative requirements applicable to nursing homes that accept Medicare or Medicaid eligible patients.

On June 15, 2016, St. Teresa filed a motion to dismiss the counterclaim, alleging in part that it was a health care provider, that the counterclaim raised a health care liability claim, and that the Ortizes had never filed an expert report as required by TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(a)(requirement that an "expert report" must be served by the plaintiff within 120 days of when each defendant health care provider files an answer). The same day, St. Teresa filed a motion for summary judgment. That motion claimed that St. Teresa fully performed its obligations under the contract and that Mary Lou Ortiz failed to pay $7,450 in charges, which Joanne Ortiz guaranteed. The motion also challenged the negligence and negligence per se counterclaim asserting there was no evidence of a legal duty owed, or breach of any such duty that proximately caused injury. The gist of that argument is that only an expert witness could create a fact issue on those elements and no expert report was ever filed in this case.

St. Teresa's efforts to set its motion for summary judgment during the Fall of 2016 were met with several motions for continuance, all granted by the trial court. One basis for the continuances was an on-going discovery dispute. The Ortizes claimed they served discovery on St. Teresa that was not timely answered. St. Teresa contended it never received the discovery requests that were served via email. When it did respond to the discovery, St. Teresa answered only the questions germane to the breach of contract claim and it refused to answer those questions directed at the counterclaim. St. Teresa urged that absent a predicate expert report, it had no obligation to respond to discovery germane to a health care liability claim.

The discovery issue was formally raised in a motion to compel. The trial court heard that motion on December 14, 2016 and concluded that the counterclaim was in fact a "health care

3

liability claim" as defined by Section 74.001(a)(13). Because the Ortizes had failed to serve a medical authorization as required by Section 74.052(a), or an expert report as required by Section 74.351(a), it denied the motion to compel discovery.

Soon after, St. Teresa filed a second motion to dismiss the counterclaim and a first amended motion for summary judgment. The motion to dismiss also included a claim for sanctions against the Ortizes' attorneys based on several pleadings they had filed.[1] After hearing those motions, the trial court disposed of the case in two orders. The first order granted St. Teresa's motion for summary judgment on its breach of contract and quantum meruit claims, awarding St Teresa $7,450 in actual damages and $7,500 in attorney's fees against the Ortizes. The second order dismissed the counterclaim because it alleged a health care liability claim and the Ortizes had failed to file an expert report. This order does not tax any attorney's fees against the Ortizes. Rather, it taxes $10,000 in attorney's fees as sanctions against the Ortizes' attorneys under TEX.R.CIV.P. 13 and TEX.CIV.PRAC.&REM.CODE ANN. § 10.001.[2] The order specifically recites that the Ortizes' motion to compel discovery responses, a June 28, 2016 motion for continuance of St. Teresa's motion for summary judgment, and a November 2, 2016 objection to the same motion were "groundless, brought in bad faith, and/or presented to the Court negligently or for an improper purpose." The Ortizes noticed an appeal only from this second order.

## ISSUES ON APPEAL

The Ortizes bring three issues on appeal. In their first issue, they claim that trial court erred in granting summary judgment against their counterclaim, citing genuine issues of material fact and claimed deficiencies in St. Teresa's motion for summary judgment. Their second issue

---

[1] The Ortizes were represented by Eduardo Lerma, Sr. and Veronica Lerma both in the trial court and on appeal.

[2] St. Teresa filed an affidavit from its attorney claiming that he expended $10,500 in fees responding to the counterclaim. He separately identified $7,500 in fees expended on St. Teresa's suit on the debt. Billing statements showing the specific time entries and billing rates were included as well.

4

contends the trial court erred in concluding the counterclaim was a health care liability claim. In their third issue, they claim the trial erred in granting sanctions without an evidentiary hearing. For its part, St. Teresa claims this appeal is frivolous and that we should award "just sanctions."

## DISCUSSION

### The Summary Judgment

As we understand the Ortizes' first issue, they claim that St. Teresa's motion for summary judgment as to their counterclaim was deficient. St. Teresa filed an affirmative Rule 166a(a) motion in support of its own claim for relief, but also included a "no evidence" section attacking the counterclaim. That section generally alleged that the Ortizes had no evidence of duty, or breach of any duty, as those elements would need to be proven through expert testimony, for which the Ortizes had none. On appeal, the Ortizes contend that St. Teresa failed to identify each of their distinct claims and then allege which element lacked evidentiary support. *See* TEX.R.CIV.P. 166a(i)(permitting party to move for a no-evidence summary judgment "without presenting summary judgment evidence," but requiring the moving party to "state the elements as to which there is no evidence."). They also claim to have raised a genuine issue of material fact on any challenged element of their counterclaim.

Whether St. Teresa's motion as to the counterclaim was sufficient or not is a moot point for two reasons. First and foremost, the trial court did not grant St. Teresa's motion for summary judgment as to the counterclaim. The order granting the motion for summary judgment only did so as to St. Teresa's affirmative claim for relief--the suit on the debt--and not on the counterclaim. Second, the Ortizes have not appealed the trial court's order on the summary judgment. The trial court entered two distinct orders--one granting the 166a(a) summary judgment and one order granting St. Teresa's "Motion to Dismiss Defendants'/Counter Plaintiffs' Counterclaims and Motion for Sanctions." The Ortizes' notice of appeal, and later filed amended notice of appeal,

5

specifically named the second order as the one they are appealing. Absent some effort to further amend their notice of appeal, we are precluded from considering an appeal from an order never identified in the notice of appeal. *See* TEX.R.APP.P. 25.1(b)("The filing of a notice of appeal by any party invokes the appellate court's jurisdiction over all parties to the trial court's judgment or *order appealed from.*"). [Emphasis added]. *See also Fain v. Georgen*, No. 03-17-00313-CV, 2017 WL 4766654, at *3 (Tex.App.--Austin Oct. 19, 2017, no pet.)(mem. op.)(collecting cases for the proposition that a notice of appeal cannot be amended to challenge an "entirely different order than the one named in the notice").[3] Issue one is overruled.

## The Counterclaim

The trial court did, however, dispose of the counterclaim based on the motion to dismiss, and the Ortizes did name that order in their notice of appeal. The sole basis for the trial court's dismissal is that the counterclaim asserts a health care liability claim under the Texas Medical Liability Act (TMLA) and the Ortizes failed to comply with the statutory predicates for such claims, including the filing a complaint expert report. In their second issue, the Ortizes challenge the trial court's characterization of all the counterclaims as health care liability claims. The scope of the TMLA is fundamentally a question of statutory construction, which as a legal question that we review de novo. *Texas West Oaks Hosp., LP v. Williams,* 371 S.W.3d 171, 177 (Tex. 2012).[4]

---

[3] A party can amend a notice of appeal to "correct typographical errors," "include omitted information," or "correct a date to refer to an amended version of the originally identified order." *Id.* at *3; s*ee also* T*aylor v. Margo*, 511 S.W.3d 117, 120 (Tex.App.--El Paso 2014, order). The Ortizes have not asked to amend the notice of appeal, despite St. Teresa raising the limitation on the notice of appeal in its appellate brief.

[4] A sister court has stated the trial court's decision to grant a motion to dismiss under Section 74.351 is reviewed for an abuse of discretion. *See Merry v. Wilson*, 498 S.W.3d 270, 272 (Tex.App.--Fort Worth 2016, no pet.). That certainly is true for certain discreet questions, such as the adequacy of a filed report or whether to grant an extension to amend a deficient report. *Baty v. Futrell*, 543 S.W.3d 689, 693 (Tex. 2018)(adequacy of report); *Rittmer v. Garza*, 65 S.W.3d 718, 721 (Tex.App.--Houston [14th Dist.] 2001, no pet.)(entitlement to extension). Here, it is undisputed that no report was filed, and the only question before us is comparing the allegations in a pleading against the scope of a statutory enactment.

In general, the TMLA reflects "a careful balance between eradicating frivolous claims and preserving meritorious ones." *Leland v. Brandal*, 257 S.W.3d 204, 208 (Tex. 2008). As a part of that balance, the statute requires that a plaintiff asserting a "health care liability claim" must serve a compliant expert report within 120 days of when each defendant health care provider files an answer. TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(a). The report must distinctly address each health care defendant's breach of the standard of care and how that breach caused injury. *Clapp v. Perez*, 394 S.W.3d 254, 259 (Tex.App.--El Paso 2012, no pet.). The expert report requirement was intended as a "substantive hurdle for frivolous medical liability suits before litigation gets underway." *Spectrum Healthcare Resources, Inc. v. McDaniel,* 306 S.W.3d 249, 253 (Tex. 2010). Failure to file the report leaves the trial court no discretion--it must dismiss the claim with prejudice and award fees and costs. TEX.CIV.PRAC.&REM.CODE ANN. § 74.351(b)(1)(2).

The statute defines a "health care liability claim" as:

> [A] cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* at § 74.001(13). Interpreting this definition, the supreme court has held that a health care liability claim has three elements: (1) the defendant is a health care provider or physician; (2) the claimant's cause of action is for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission complained of must proximately cause the claimant's injury. *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012).

The courts have also held that the TMLA creates a rebuttable presumption that a patient's claims against a healthcare provider are "healthcare liability claims" if they are based on facts implicating the healthcare provider's conduct during the patient's care, treatment or confinement.

7

*Id.* at 252. In *Loaisiga*, for instance, the claim that a physician improperly touched a patient during a physical exam may or may not have been a health care liability claim--but the patient needed to overcome the presumption that such a claim falls within the TMLA. *Id*; *see also Rio Grande Valley Vein Clinic, P.A. v. Guerrero*, 431 S.W.3d 64, 65 (Tex. 2014)(per curiam)(patient failed to rebut presumption that injury caused by hair removal procedure was a health care liability claim).

Plaintiffs are also precluded from using artful pleading to avoid the TMLA. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 854 (Tex. 2005). If the act or omission alleged in the complaint is an inseparable part of the rendition of health care services, then the claim is a health care liability claim. *Garland Community Hosp. v. Rose*, 156 S.W.3d 541, 543-44 (Tex. 2004), *citing Walden v. Jeffery,* 907 S.W.2d 446, 448 (Tex. 1995). And one consideration in that determination is whether a medical expert would be required to prove the claim. *Rose*, 156 S.W.3d at 543-44. Moreover, "[w]hen the underlying facts are encompassed by provisions of the TMLA in regard to a defendant, then all claims against that defendant based on those facts must be brought as health care liability claims." *Yamada v. Friend*, 335 S.W.3d 192, 193-94 (Tex. 2010). Applying these precepts, we find there is no question that the counterclaim raised a health care liability claim.

First, St. Teresa is a health care provider. The statute itself makes that clear. TEX.CIV.PRAC.&REM.CODE ANN. § 74.001(a)(11)(J)("'Health care institution' includes: . . . a nursing home") and § 74.001(a)(12)(A)(vii)("'Health care provider' means any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care, including: . . . a health care institution[.]"). As the Texas Supreme Court has explained, a nursing home provides a variety of services to its patients "which include supervising daily activities; providing routine examinations and visits with physicians; providing dietary, pharmaceutical, and routine dental services; monitoring the physical and mental conditions of its residents; administering medications; and

8

meeting the fundamental care needs of the residents." *Diversicare*, 185 S.W.3d at 849-50. The level and types of health care services provided vary with the needs and capabilities of the patients. *Id.* Nursing homes by law must assess each resident and prepare a comprehensive care plan to address the resident's medical, nursing, mental, psychosocial, and other needs. 40 TEX.ADMIN.CODE § 19.802. And as the *Diversicare* court noted, "[s]ome patients require enhanced supervision and additional staff . . . to protect them from injuring themselves[.]" *Diversicare*, 185 S.W.3d at 849-50. "The nature and intensity of care and treatment, including professional supervision, monitoring, assessment, quantities and types of medication, and other medical treatment are judgments made by professionals trained and experienced in treating and caring for patients and the patient populations in their health care facilities." *Id.*

The counterclaim's allegations make clear that the Ortizes are complaining about departures from the standard of care for health care, or safety directly related to health care. The negligence allegations include:

a. failing to adhere to the acceptable standards for care of residents in the nursing home care;

b. failing to provide properly trained staff to care for Counter-Plaintiff;

.   .   .

d. failing to properly provide the regulatory staff to resident ratio staffing necessary to provide adequate care to Counter-Plaintiff according to the standards set by the regulatory state and federal boards;

e. failing to properly supervise the home care and staffing of Counter-Plaintiff Mary Lou Ortiz after admission to Counter-Defendant's facility,

f. failing to care and supervise Counter-Plaintiff to prevent Counter-Plaintiff from falling and injuring herself, on multiple occasions;

g. failing to timely attend to Counter-Plaintiff after her falls because staff was not in Counter-Plaintiff's, Mary Lou Ortiz, presence for an extended period of time;

Additionally, the Ortizes negligence per se allegations contend that St. Teresa violated these administratively imposed duties:

b. Pursuant to 42 C.F.R. § 483. 13(c) the Counter-Defendants and their staff had a duty to develop and implement written policies and procedures that prohibit resident neglect.

.　　.　　.

d. Pursuant to 42 C.F.R. § 483.20(k)(3)(i), Counter-Defendants must ensure that the services provided and arranged by the facility meet professional standards of quality.

e. Pursuant to 42 C.F.R. § 483.25, Counter-Defendants must ensure that each resident receives, and the defendants must provide, the necessary care and services to attain and maintain the highest practicable physical, mental, and psychosocial well being, in accordance with the comprehensive assessment and plan of care.

f. Pursuant to 42 C.F.R. § 483.25(a)(l), Counter-Defendants and their staff had a duty to make sure that a resident's abilities and activities of daily living did not diminish unless circumstances of the individual's clinical condition demonstrated that diminution was unavoidable.

g. Pursuant to 42 C.F.R. § 483.2S(h)(l), Counter-Defendants must ensure that the resident's environment remains as free from accident hazards as possible.

h. Pursuant to 42 C.F.R. § 483.25(h)(2), Counter-Defendants must ensure that the resident receives adequate supervision and assistive devices to prevent accidents.

Each of these allegations implicate departures from the standard of care for health care or safety directly related to health care. *See Diversicare*, 185 S.W.3d at 845 (failure to provide adequate supervision leading one nursing home resident to sexually assault a co-resident stated a health care liability claim because the supervision of both was "inseparable from the health care and nursing services provided"); *Omaha Healthcare Ctr., LLC v. Johnson*, 344 S.W.3d 392, 395 (Tex. 2011)(failure to guard nursing home resident from brown recluse spider bite implicated safety standard and triggered TMLA); *Shaw v. BMW Healthcare, Inc.*, 100 S.W.3d 8, 15 (Tex.App.--Tyler 2002, pet. denied)(decision of nursing home to administer chemical restraint to keep resident from wandering stated a health care liability claim); *Waters ex rel. Walton v. Del-Ky, Inc.*, 844 S.W.2d 250, 252 (Tex.App.--Dallas 1992, no pet.)(failure of nursing home to monitor resident who fell from a second-floor window stated a health care liability claim).

10

We also see a clear nexus between the safety standards allegedly violated and the provision of health care. For a time, some health care providers urged that plaintiffs in any slip and fall case--even those involving non-patients--comply with the TMLA expert report requirement because safety policies were at issue. The court in *Ross v. St. Luke's Episcopal Hosp.* heard and rejected such a broad interpretation of the statute. 462 S.W.3d 496, 504-05 (Tex. 2015). Rather, the court held there must be a nexus between the safety policy and the actual provision of health care. *Id.* "The pivotal issue in a safety standards-based claim is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety." *Id.* The court suggested a series of factors that would guide that inquiry:

> 1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;
>
> 2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;
>
> 3. At the time of the injury was the claimant in the process of seeking or receiving health care;
>
> 4. At the time of the injury was the claimant providing or assisting in providing health care;
>
> 5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;
>
> 6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or
>
> 7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Id*. at 505. The claimant in *Ross* was a visitor injured while walking in the front door of the facility; the answer to each of the above considerations was "no" and thus the TMLA was not implicated. *Id*. Each of the applicable considerations in this case, however, is "yes." St. Teresa was required to implement a care plan that would minimize the risk of falls for a physically and mentally impaired resident. The Ortizes alleged it to have failed to do so, or failed to have followed its own

11

plan. The falls occurred in the facility while Mary Lou was a resident and resulted from alleged failures to comply with safety related requirements imposed by governmental authorities.

In response, the Ortizes primarily urge that they asserted a separate "corporate malfeasance" claim that is independent of the TMLA.[5] We disagree. First, the Ortizes fail to show that corporate malfeasance is a distinct cause of action in Texas. The term might be a generic descriptor for claims such as the failure to staff, train, or supervise, but those type allegations only find substance if the staff person responsible for Mary Lou's care actually made some error that caused injury. And those type of claims are already bound in the TMLA. *See Diversicare,* 185 S.W.3d at 850 ("[T]raining and staffing policies and supervision and protection of [patients] . . . are integral components of [a health care facility's] rendition of health care services. . . ."); *Texas West Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 180 (Tex. 2012)(allegations of failure to properly train facility's staff, provide adequate protocols, and equipment implicate the TMLA so long as there is a nexus between the training, protocol, and equipment, and the provision of health care).

The Ortizes also argue that they had no need for an expert to support their claim. And they claim the need for expert testimony is the talisman for whether the TMLA applies. To be sure, the necessity of expert testimony on the medical standard of care is one factor in deciding if an allegation raises a health care liability claim. *Psychiatric Sols., Inc. v. Palit*, 414 S.W.3d 724, 726 (Tex. 2013). But whether the Ortizes could have gotten some theory to a jury without an expert is beside the point. The legislature has required those asserting health care liability claims to file an expert report. The counterclaim was dismissed based on this failure, and not whether they ultimately needed an expert witness as trial. *See Tenet Hosps. Ltd. v. Bernal*, 482 S.W.3d 165,

---

[5] That allegations reads: "Counter-Defendant St. Teresa Nursing and Rehabilitation Center, LLC committed corporate malfeasance by neglecting the care of Counter-Plaintiff, who Counter- Defendant admitted her to their care, knowing her medical need and neglecting their duty to care for Counter-Plaintiff."

12

170 (Tex.App.--El Paso 2015, no pet.)(rejecting similar argument regarding need for expert to show nurse's action in removing catheter caused pain); *see also Merry v. Wilson*, 498 S.W.3d 270, 277 (Tex.App.--Fort Worth 2016, no pet.)(collecting cases holding that even if *res ipsa loquiter* might apply in medical negligence claim, plaintiff still needed to file expert report to comply with the statute).

Even at that, expert testimony is necessary when the alleged negligence is of such a nature as not to be within the experience of laypersons. *Roark v. Allen,* 633 S.W.2d 804, 809 (Tex. 1982). How a health care institution develops a fall prevention plan for a cognitively impaired, and possibly frail individual, would likely fall outside a layperson's common knowledge. The range of alternatives available to the nursing home for high fall risk individuals--from low beds, bed alarms, medication adjustments, or in the most severe cases, restraints--would require medical judgment to select and implement. Nor are staffing ratios and care plans necessarily within a lay juror's common understanding. We reject the notion that no expert was required here, at least as to some of the allegations in the counterclaim. *See Am. Transitional Care Centers of Texas, Inc. v. Palacios*, 46 S.W.3d 873, 876 (Tex. 2001)(discussing adequacy of expert report in case involving the alleged failure to prevent a fall for an impaired patient); *Estate of Birdwell ex rel. Birdwell v. Texarkana Memorial Hosp., Inc.*, 122 S.W.3d 473, 478 (Tex.App.--Texarkana 2003, pet. denied)(discussing adequacy of report in case where elderly patient with multiple medical problems fell in her hospital room); *Tenet Hospitals Ltd. v. Barajas*, 451 S.W.3d 535, 538 (Tex.App.--El Paso 2014, no pet.)(challenge to adequacy of report for claim that hospital failed to protect post-surgical patient from fall); *SunBridge Healthcare Corp. v. Penny*, 160 S.W.3d 230, 246 (Tex.App.--Texarkana 2005, no pet.)(necessity of expert on issue of corporate funding, nursing home budgets, and staffing level standards); *see also Rehabilitative Care Systems of America v. Davis*, 73 S.W.3d 233, 234 (Tex. 2002)(per curium opinion disapproving of court of

13

appeals statement that negligent supervision claim against physical therapist could be determined without the aid of expert testimony).

We overrule Issue Two.

## The Sanction

In their third issue, the Ortizes claim that the trial court erred in awarding a sanction against their counsel because the court failed to conduct an evidentiary hearing and its written order does not precisely correspond its pronouncement from the bench.

St. Teresa, however, points out that only the Ortizes filed a notice of appeal, and not the attorneys who are subject to the sanction order. It claims that the Ortizes lack standing to complain of a sanction award against their attorneys, and the attorneys are precluded from appealing absent a timely notice of appeal. There is something of a split in the courts of appeals on this issue. Most have required the attorney to separately file a timely notice of appeal. *Bahar v. Baumann*, No. 03-09-00691-CV, 2011 WL 4424294, at *2 (Tex.App.--Austin Sept. 23, 2011, pet. denied) (mem. op.)("When an attorney and his client are both sanctioned, and both wish to appeal the sanctions order, this Court and other courts of appeals have held that it is essential that both the client and the attorney be named as appellants in the notice of appeal."); *Niera v. Frost Nat'l Bank,* No. 04-09-00224-CV, 2010 WL 816191, at *1-2 (Tex.App.--San Antonio Mar. 10, 2010, pet. denied)(mem.op.)(same); *Matbon, Inc. v. Gries,* 287 S.W.3d 739, 740 (Tex.App.--Eastland 2009, no pet.)(same). The Houston First, however, has disagreed at least to the extent that it allowed the attorney to file an amended notice of appeal before any briefs were filed. *St. Mina Auto Sales, Inc. v. Al-Muasher*, 481 S.W.3d 661, 665-66 (Tex.App.--Houston [1st Dist.] 2015, pet. denied). *St. Mina* relies on large part on the opening sentence of TEX.R.APP.P. 25.1(b) which states the filing of a notice of appeal "by any party" invokes appellate jurisdiction "over all parties to the trial court's judgment or order." *Id.* The same subsection, however, states that the failure of any party

14

to take any other step required by the rules, "including the failure of another party to perfect an appeal" does not deprive the appellate court of jurisdiction but might be grounds for other relief, including "dismissing the appeal." *Id*. Justice Jennings concurred and dissented in *St. Mina Auto* and concluded the majority's reasoning negated other sections of Rule 25, particularly 25.1(c) that requires any party desiring to alter the judgment or order to file a notice of appeal. *St. Mina Auto*, 481 S.W.3d at 675 (Jennings, J., concurring and dissenting in part). The Texas Supreme Court has noted, but not resolved the issue. *Braden v. Downey*, 811 S.W.2d 922, 928 n.6 (Tex. 1991)("We express no opinion on the question whether, in order to seek review of sanctions by appeal, an attorney must perfect a separate appeal apart from that perfected by his client.").

The Ortizes have not filed a reply brief addressing the problem with the notice of appeal. They (or more particularly, their attorneys) have not made any effort to amend the notice of appeal. It is enough for us to say that if at the least an amended notice of appeal is required, none has not been sought here.[6] Issue Three is overruled.

### SANCTION FOR FRIVOLOUS APPEAL

St. Teresa asks that we further sanction the Ortizes for filing a frivolous appeal under TEX.R.APP.P. 45 (damages for frivolous appeal in civil cases).

After considering the record, briefs, and other papers filed in this Court, we may award a prevailing party "just damages" if we objectively determine that an appeal is frivolous. *Id.*; *Faddoul, Glasheen & Valles, P.C. v. Oaxaca*, 52 S.W.3d 209, 212-13 (Tex.App.--El Paso 2001, no pet.); *see also Smith v. Brown*, 51 S.W.3d 376, 380-81 (Tex.App.--Houston [1st Dist.] 2001, pet. denied). An appeal is frivolous when the record, viewed from the perspective of the advocate,

---

[6] We also hasten to add that the primary complaint under this issue is that the trial court did not hold an evidentiary hearing on the sanction. But St. Teresa's motion to dismiss included exhibits documenting the various pleadings that were asserted to be violative of Rule 13 and Chapter 10. It also included an affidavit with a billing statement supporting the amount of attorney's fees requested. These were all admitted as exhibits at the hearing. The Ortizes' counsel failed to submit any rebuttal evidence and at the hearing declined to make a specific response to the request for sanctions. Setting aside the notice of appeal issue, we would deny the issue on its merits.

does not provide reasonable grounds for the advocate to believe that the case could be reversed. *Smith*, 51 S.W.3d at 381; *American Paging of Texas v. El Paso Paging, Inc.,* 9 S.W.3d 237, 240 (Tex.App.--El Paso 1999, pet. denied). The decision to grant appellate sanctions is a matter of discretion that an appellate court exercises with prudence and caution and only after careful deliberation. *Id.* Notably, Rule 45 does not require the Court to award just damages in every case in which an appeal is frivolous. *Woods v. Kenner*, 501 S.W.3d 185, 198 (Tex.App.--Houston [1st Dist.] 2016, no pet.); *Glassman v. Goodfriend*, 347 S.W.3d 772, 782 (Tex.App.--Houston [14th Dist.] 2011, pet. denied). After a review of the record, briefing, and other papers filed in this Court, we deny St. Teresa's request for damages.[7]

We affirm the judgment below.

May 31, 2019

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

---

[7] If we chose otherwise, we would then confront what is a "just" damage for this case. Commentators have observed that Rule 45 gives appellate courts "virtually unbridled discretion" in assessing just damages. John Hill Cayce, Jr., Anne Gardner, and Felicia Harris Kyle, *Civil Appeals in Texas:  Practicing Under the New Rules of Appellate Procedure,* 49 Baylor L.Rev. 867, 1013 (1997). Some evidence documenting the cost of an appeal, however, is a great aide in the exercise of that discretion. *See Smith v. Brown*, 51 S.W.3d 376, 381 (Tex.App.--Houston [1st Dist.] 2001, pet. denied)(noting use of affidavit to establish attorney's fees expended in defending appeal); *McCullough v. Scarbrough, Medlin, & Associates Inc.*, No. 08-12-00205-CV, 2012 WL 3100845, at *1 (Tex.App.--El Paso July 31, 2012, no pet.)(mem.op.)(same). The record here, however, contains no affidavits or other proof to support any particular amount of attorney's fees expended in responding to the appeal.