COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| PETER I. SHAH, | § | No. 08-22-00198-CV |
| Appellant | § | Appeal from the |
| | § | 143rd Judicial District Court |
| v. | | |
| | § | of Reeves County, Texas |
| MAPLE ENERGY HOLDINGS, LLC, | | |
| | § | (TC# 22-03-24342-CVR) |
| Appellee | | |

## MEMORANDUM OPINION

This is an appeal from an order granting summary judgment in favor of Appellee Maple Energy Holdings, LLC (Maple Energy) for (1) a declaratory judgment that it had the right to the reasonable use of a property's surface estate as a mineral lessee and (2) an injunction prohibiting Appellant Peter Shah, the surface-estate owner, from interfering with such reasonable use. The trial court also entered a $95,154.50 money judgment against Shah consisting of two attorney's fees awards to Maple Energy—one pursuant to Rule 91a in the amount of $9,738.00 and one pursuant to the Uniform Declaratory Judgment Act (UDJA) in the amount of $85,416.50.

On appeal, Shah contends the trial court erred in granting Maple Energy's summary judgment, denying his cross-motion for summary judgment, and awarding Maple Energy attorney's fees. We affirm the court's summary judgment rulings. And although we affirm the trial court's award of UDJA-based attorney's fees in the amount of $85,416.50, we conclude the trial

court erred in awarding Rule 91a-based attorney's fees in the amount of $9,738.00 as part of the judgment for "monetary relief." We therefore suggest a remittitur to Maple Energy pursuant to TEX. R. APP. P. 46.3 allowing it to accept a total money award of $85,416.50. If Maple Energy does not accept the remittitur, we reverse the trial court's judgment for monetary relief and remand for a new hearing solely on the appropriate amount of attorney's fees to be awarded under the UDJA.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Shah's dispute with Maple Energy's predecessor-in-interest

Shah is the surface-estate owner of 20.04 acres of land in Reeves County consisting of four tracts of land of approximately five acres each, identified as Section 8, Block C-18 PSL (we refer to this land or any portion thereof as the Property). Teresa Bell acquired the mineral estate under the surface of the Property through a quitclaim deed on July 15, 2003, and subsequently signed a mineral lease with an oil and gas operator, San Saba Resources, in January 2011 (the Bell Lease).[1] In June 2015, Maple Energy's predecessor in interest, MDC Energy Holdings LLC (MDC Energy), a Delaware corporation, was assigned all interests in that lease, together with several other mineral leases in Reeves County covering approximately 400 acres.

In late October 2019, MDC Energy filed for Chapter 11 bankruptcy in a Delaware bankruptcy court. In November 2019, MDC Energy notified Shah it intended to construct a tank battery and pipe networks on the Property. After Shah objected, MDC Energy offered Shah compensation for agreeing to the construction, but Shah rejected the offer. In February 2020, Shah filed a complaint in the bankruptcy court, acting pro se, claiming MDC Energy had no right to access the Property's surface and seeking an injunction prohibiting MDC Energy from entering

---

[1] In his briefing, Shah appears to question the validity of the quitclaim deed and whether Bell had the authority to enter into the mineral lease. However, Bell's authority to lease the Property was not at issue in the trial court.

2

the Property and conducting its oil and gas operations thereon. After the bankruptcy court informed Shah he had not properly filed his injunction request, Shah filed an administrative claim in that court in May 2020, seeking damages for MDC Energy's construction of the tank battery on the Property. The bankruptcy court denied the claim in June 2020, finding that MDC Energy, as the mineral lessee, had the right to the reasonable use of the Property's surface to effectuate the purpose of its leases. It further found installing the tank battery was within MDC Energy's rights as the mineral lessee. The court held that Shah had not presented any evidence to support a finding that Maple Energy's use of the Property was substantially impairing Shah's use of the surface, or that Maple Energy had caused any compensable damage to the Property. Thereafter, Shah filed a similar administrative claim regarding MDC Energy's construction of a pipe network on the Property, which the bankruptcy court denied in a July 2020 order, finding Shah was estopped from bringing the claim based on the doctrines of claim and issue preclusion.

## B.  Shah's dispute with Maple Energy

As part of the court's confirmed bankruptcy plan, Maple Energy purchased MDC Energy's leases through an Asset Purchase Agreement (APA) in June 2021, which included the purchase of the Bell Lease. Maintaining it was entitled to use the Property surface as reasonably necessary to facilitate its mineral operations pursuant to its mineral leases, Maple Energy asked Shah if he wished to sell the Property or enter a surface lease agreement in which it would pay Shah for its use. Shah declined and began making demands that Maple Energy cease using the Property surface. In a November 12, 2021 letter, Shah demanded that Maple Energy remove its equipment within 30 days or it would lock Maple Energy out of the Property or take legal action. Shah informed Maple Energy that he was negotiating with a "solar energy installer to install a 5MW solar farm" and needed the Property Maple Energy was using for its operations. Shah posted a "no trespassing" sign and placed a lock on the Property. With help from the sheriff's office, the lock

3

was removed. During this time, Shah wrote letters to the sheriff and the Railroad Commission of Texas contending Maple Energy had no right to be on the Property and was conducting an "unpermitted gas flaring" and/or an "unpermitted gas flaring and venting operation" there. He also filed an affidavit with the Reeves County Clerk stating he had sent Maple Energy cease-and-desist letters.

In January 2022, Shah filed a federal lawsuit, acting pro se, in New Jersey where he resides, naming Maple Energy Holdings, LLC, Riverstone Holdings, LLC (which Shah identified as Maple Energy's parent company), and the Railroad Commission of Texas as defendants. Shah sought an injunction staying Maple Energy's operations on the Property and $600,000 in damages for Maple Energy's alleged "unauthorized oil and gas operations." In March 2022, Maple Energy filed a motion to dismiss Shah's lawsuit on several grounds, including lack of personal jurisdiction and failure to state a claim for relief. The district court granted the motion.

### C. The Texas lawsuit

In March 2022, Maple Energy filed its original petition in the current lawsuit in Reeves County seeking: (1) a declaratory judgment that it had the right to use the surface estate as necessary to conduct its oil and gas operations under its mineral leases; (2) an injunction to prevent Shah from continuing to interfere with its rights under the leases; and (3) an attorney's fees award. The petition itself was 13 pages, but Maple Energy included 321 pages of exhibits.

#### (1) *Shah's motion to dismiss and the trial court's first award of attorney's fees*

Shah did not file a response to Maple Energy's petition and instead filed a motion to dismiss the lawsuit, again acting pro se. Shah primarily argued that the lawsuit should be dismissed because: Maple Energy was not the real party in interest and therefore lacked standing to bring the lawsuit; the same issues were pending in the New Jersey court; Shah was not properly served; and

4

portions of Maple Energy's petition were "vague" and "unreadable."[2] The trial court denied the motion, and at Maple Energy's request, awarded it $9,738.00 in attorney's fees as the prevailing party pursuant to Texas Rule of Civil Procedure 91a. Shah attempted to appeal the trial court's order, but this Court dismissed the appeal for lack of jurisdiction, as it was not a final, appealable order.

### (2) *Maple Energy's summary judgment motion*

In July 2022, Maple Energy filed a summary judgment motion seeking a final judgment on its request for declaratory and injunctive relief, together with an award of attorney's fees under the Uniform Declaratory Judgment Act. Maple Energy argued (1) as the mineral lessee, it had the right under Texas law to go on the Property to conduct operations reasonably necessary for producing oil, gas, and other minerals; (2) Shah was unreasonably restricting its use of the surface estate; and (3) the bankruptcy court already determined that Maple Energy's predecessor-in-interest had the right to reasonable use of the Property.

In support of its motion, Maple Energy filed documents from the bankruptcy court and the New Jersey district court proceedings. It also filed an affidavit of its managing director, Christopher Abbate, who attached a copy of the APA through which Maple Energy had purchased the mineral leases at issue in the bankruptcy court. Maple Energy provided documentation of Shah's above-described efforts to keep Maple Energy off the Property. Maple Energy also attached a copy of a June 2020 "notice of property for sale" of the Property, which Shah had previously filed with the court, representing that there were no oil and gas leases on the Property and the buyer

---

[2] Shah attached three pages of Maple Energy's exhibits pertaining to royalty provisions in a mineral lease that had some blurring. Shah did not ask Maple Energy to provide a more legible copy of the lease, nor did he file any special exceptions to Maple Energy's petition pointing out any other deficiencies with the petition, as required by TEX. R. CIV. P. 91.

would be entitled to "keep and operate" Maple Energy's tank battery and "other oil and gas operations" as part of the sale.

The trial court notified the parties of an August 5, 2022 hearing setting on Maple Energy's summary judgment motion. Shah did not file a response to the motion and did not appear at the hearing. After hearing argument from Maple Energy's counsel and noting Shah had been duly notified of the hearing but failed to appear, the trial court granted summary judgment on both of Maple Energy's claims for relief. The court further ruled that it would award Maple Energy its reasonable attorney's fees pursuant to the Uniform Declaratory Judgment Act upon the submission of a fee affidavit from counsel.

Maple Energy provided an affidavit from its attorney, John Turner—a Bailey & Glasser, LLP partner—together with the firm's billing records documenting approximately 133 hours of firm work spent prosecuting the lawsuit, apart from the hours the firm billed for opposing Shah's motion to dismiss. Turner further averred that he did not include his billings for any work related to the New Jersey lawsuit. In conclusion, Turner attested that he believed $85,416.50 would be a reasonable and necessary award of fees.

### (3)  *Shah's summary judgment cross-motion*

Although Shah never filed a counterclaim against Maple Energy, he filed a cross-motion for summary judgment in July 2022, seeking three million dollars as "payment" for the use of his surface estate and the removal of the gas flare operations from the Property. Shah argued, among other things, that Maple Energy had been using the Property without his permission and without compensation in violation of his constitutional rights, and further that Maple Energy did not have a permit for the gas flare. In the cross-motion, Shah stated he had signed a "renewable energy storage lease" with a company and he wished to sign additional leases with a solar power company to generate solar power electricity, which he believed would net him a considerable profit. Shah

6

further complained that the gas flare was polluting the area and opined that allowing him to pursue renewable energy sources on the Property would be better for the environment. Shah, however, failed to support his motion with evidence that Maple Energy was performing unauthorized or unpermitted activities on the Property.

In its response, Maple Energy pointed out that the cross-motion—in addition to misrepresenting how it conducts its business and making "wild arguments" that Maple Energy was depriving him of his constitutional rights–was procedurally defective because Shah had not filed a counterclaim against Maple Energy, and Shah therefore did not, and could not, identify any cause of action upon which to grant a judgment in his favor.

### (4) *Shah's remaining motions*

Shah also filed four additional motions. First, he filed a motion to add additional parties, including Christopher Abbate, Walt Hughes, and Riverstone Credit Partners, contending they owned Maple Energy and were therefore "necessary and indispensable parties" in the case. Maple Energy opposed the motion, contending Shah had not established that they were necessary parties. Second, Shah filed a request for an "adjournment" of the proceedings for 60 days while the New Jersey case was pending, but Maple Energy pointed out that nothing was pending in the New Jersey court at the time. Third, Shah filed a motion to set a discovery schedule and a jury trial, but Maple Energy opposed the motion because the trial court had already ruled it was granting its summary judgment motion, thus there was no need to set a discovery schedule or a jury trial.

And fourth and finally, Shah filed a motion to sanction Maple Energy's attorneys for allegedly falsifying their fee statement. In the motion, Shah complained that, among other things, Bailey & Glasser's billing records reflected that Turner, who was Texas-licensed, consulted on the Texas litigation with a non-Texas licensed attorney in his firm, Patricia Kipnis, and billed Maple Energy for the consultation. Shah further complained that Turner, who was not New Jersey-

7

licensed, made appearances in the New Jersey district court and accused the attorneys of "performing other illegal out of state unauthorized and unadmitted bar law practices." Maple Energy opposed the motion, with a verified response from Turner, asserting that Kipnis never made an appearance in the Texas litigation and only consulted with Turner to coordinate strategies in the related lawsuits, pointing out that she was involved in handling the New Jersey proceedings. And Turner further avowed that he never made a formal appearance in the New Jersey proceeding, but only appeared in two conference calls with a district court magistrate, with the magistrate's permission.[3]

The record contains a letter from the trial court notifying the parties it was setting all of Shah's motions, including his cross-motion for summary judgment, for a Zoom hearing on September 20, 2022. But Shah failed to attend the hearing.[4] After hearing arguments from Maple Energy's counsel, the trial court announced it was denying Shah's motions and requested that counsel provide proposed orders on each motion.

### D. The trial court's final judgment

On September 22, 2022, the trial court entered a series of orders denying all five of Shah's pending motions, including his summary judgment cross-motion. The same day, the trial court

---

[3] Shah sought sanctions against Turner and Kipnis in the United States District Court in New Jersey for virtually the same reasons, but that court found there was no evidence that either attorney had engaged in any wrongdoing. In particular, the court found (1) Turner never made a formal appearance in the New Jersey proceeding and had only limited participation, which included participating in the two conference calls at the court's invitation, and (2) there was no evidence Kipnis had signed or filed any pleadings in the Texas litigation. *Shah v. Maple Energy Holdings, LLC*, No. CV 21-20791 (FLW), 2022 WL 17553068, at *4 (D.N.J. Dec. 9, 2022).

[4] Shah contends on appeal he did not receive the trial court's notice of the hearing. However, the record contains a certification from Maple Energy's attorney that he notified Shah of the September 20, 2022 hearing, which was sufficient to create a presumption that Shah received the notice. TEX. R. CIV. P. 21a (providing that a "certificate by a party or an attorney of record, or the return of an officer, or the affidavit of any other person showing service of a notice shall be prima facie evidence of the fact of service"); *Cliff v. Huggins*, 724 S.W.2d 778, 780 (Tex. 1987) (discussing nature of the presumption). Shah never sought to rebut that presumption and instead, in his brief, acknowledges Maple Energy's attorney did in fact notify him of the hearing.

issued its written order granting Maple Energy's summary judgment motion on both of its claims and granting it attorney's fees pursuant to the Uniform Declaratory Judgment Act.

The trial court also issued its final judgment the same day in which it found Maple Energy held mineral leases on the Property and had the concomitant right to use the surface estate in connection with its oil and gas operations and the right of ingress and egress with respect to the surface estate. The trial court further found an actual controversy existed between the parties, given Shah's actions in refusing to acknowledge Maple Energy's rights and in attempting to interfere with Maple Energy's rights. The court therefore granted Maple Energy's request for a declaratory judgment stating it had the right to the reasonable use of Shah's surface estate as necessary to facilitate its oil and gas operations and that its current operations were within its rights. It also granted Maple Energy's request for injunctive relief, entering a permanent injunction prohibiting Shah from: interfering with Maple Energy's mineral lessee rights, preventing Maple Energy from entering the Property, and offering Maple Energy's assets for sale. And finally, Shah was ordered to pay Maple Energy $85,416.50 pursuant to the UDJA for the attorney's fees it incurred in pursuing its lawsuit, together with the $9,738.00 in attorney's fees it previously ordered in connection with the motion to dismiss, for a total of $95,154.50, which the court labeled a judgment for "monetary relief."

Shah did not file a motion for new trial or reconsideration. This appeal followed.

## II. STANDARDS FOR PRO SE PARTIES AND BRIEFING REQUIREMENTS

In both the trial court and on appeal, a pro se litigant is held to the same standards as a licensed attorney when representing himself and must therefore comply with all applicable laws and rules of procedure in doing so. *See Zavala v. Franco*, 622 S.W.3d 612, 617–18 (Tex. App.— El Paso 2021, pet. denied); *see also Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005) (recognizing that pro se litigants are not exempt from the rules of procedure); *Martinez v. El Paso County*, 218

S.W.3d 841, 844 (Tex. App.—El Paso 2007, pet. struck) (recognizing that a pro se litigant is required to properly present her case on appeal, just as she is required to properly present her case to the trial court). "Therefore, we will not make allowances or apply different standards, because a case is presented by a litigant acting without the advice of counsel." *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.) (citing *Martinez*, 218 S.W.3d at 844); *see also Zhao v. Sea Rock Inc.*, 659 S.W.3d 119, 128–29 (Tex. App.—El Paso 2022, pet. denied) (finding that plaintiff's pro se status and his alleged misunderstanding of the laws cannot be considered in determining whether plaintiff adequately established his case in the trial court and whether he made adequate arguments on appeal).

In considering the arguments made in Shah's brief, we will be guided by the Texas Supreme Court's recognition that we should construe pro se briefs liberally and with patience. *See Smart v. Prime Mortgage & Escrow, LLC*, 659 S.W.3d 155, 160 (Tex. App.—El Paso 2022), cert. denied, 143 S. Ct. 533 (2022) (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989); *see also Johnson v. McAdams*, 781 S.W.2d 451, 452 (Tex. App.—Houston [1st Dist.] 1989, orig. proceeding) ("The Supreme Court directs us to seek the substance of a pro se complaint by reviewing pro se applications with liberality and patience."). However, Shah's brief must still comply with the applicable rules governing the filing of appellate briefs. *Id.* (citing *Valadez*, 238 S.W.3d at 845).

Texas Rule of Appellate Procedure 38.1 sets forth the appellant's brief requirements, including the requirement to provide a statement of each issue presented for review, a summary of the argument for each issue, and "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1 (f) (h) and (i). The latter requirement is not satisfied "by merely uttering brief conclusory statements unsupported by legal citations." *Valadez*, 238 S.W.3d at 845 (citing *Sweed v. City of El Paso*, 195 S.W.3d 784, 786

10

(Tex. App.—El Paso 2006, no pet.)). Failure to cite legal authority or substantively analyze the legal issue presented waives the complaint. *Id.* (citing *Martinez*, 218 S.W.3d at 844; *see also Smart*, 659 S.W.3d at 161. In other words, "[w]hen an issue is inadequately briefed, and lacks a substantive analysis and citation to legal authority, it presents nothing for our review." *Pedroza v. Tenet Healthcare Corp.*, 555 S.W.3d 608, 612 (Tex. App.—El Paso 2018, no pet.) (citing *ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010). Appellate courts have "no duty—or even right—to perform an independent review of the record and applicable law to determine whether there was error." *Martinez v. Ward*, 303 S.W.3d 326, 328 (Tex. App.—El Paso 2009, no pet.) (quoting *Valadez*, 238 S.W.3d at 845). Nor may a court make an appellant's arguments for him. *Pedroza*, 555 S.W.3d at 612 (citing *Castro v. Ayala*, 511 S.W.3d 42, 48 (Tex. App.—El Paso 2014, no pet.).

Rule 38.3 limits reply briefs to addressing matters raised in the appellee's brief; an appellant may not raise new issues for the first time in a reply brief. TEX. R. APP. P. 38.3; *see also Blair v. Blair*, 642 S.W.3d 150, 155, n. 2 (Tex. App.—El Paso 2021, no pet.) (citing *Watret v. Watret*, 623 S.W.3d 555, 563-64 (Tex. App.—El Paso 2021, no pet.) (recognizing Rule 38.3 restricts reply briefs to addressing only matters raised in appellee's brief and may not present a new issue to the court). Accordingly, we may not consider issues that were not initially raised in an appellant's brief and were instead raised for the first time in a reply brief. *Anderson Producing Inc. v. Koch Oil Co.*, 929 S.W.2d 416, 424 (Tex. 1996) (court declined to consider issue first raised in party's reply brief).

We next assess which issues are adequately briefed keeping in mind these standards.

## III. Issues on Appeal

In the statement of issues in his brief, Shah lists a total of 17 issues, although he candidly admits he did not brief every issue.[5]

Even under the most liberal and patient review, Shah waived the following ten issues due to inadequate briefing: (1) whether the trial court erred by denying Shah's motion to dismiss without including any facts or legal authority in its order (issue one); (2) whether the trial court erred by allowing Maple Energy to file a 336-page lawsuit, parts of which were unreadable (issue two); (3) and (4) whether the trial court erred by ordering Shah to pay attorney's fees directly to Maple Energy's attorney (issue six) or to Maple Energy's manager, Chris Abbate, who Shah claims was an unrepresented party in the case (issue twelve); (5) and (6) whether the trial court erred by issuing its final judgment before issuing its order granting summary judgment (issue seven), or alternatively, whether the trial court erred by issuing its final judgment and its order granting summary judgment on the same day (issue ten); (7) whether the trial court erred by denying Shah's jury-trial request despite Shah having paid his jury fees (issue eight); (8) and (9) whether the trial court erred by issuing its final judgment and a permanent injunction without giving notice to Shah of the September 20, 2022 hearing (issues eleven and thirteen); and (10) whether the trial court erred by signing its final judgment without including any case law or citation to authority (issue sixteen).[6]

---

[5] Although Shah's list of issues was numbered 1-16, he listed number nine twice. Therefore, we count 17 issues.

[6] Among other things, Shah provides no argument to support his contentions the trial court erred in issuing its orders in the sequence it did and instead makes unsupported allegations that the trial court did not read his motions before denying them and that the trial court simply rubber-stamped Maple Energy's proposed orders. In addition, Shah makes no argument to support his claim that the trial court's orders were deficient for failure to provide any findings of fact or conclusions of law (and the record does not reflect that Shah requested any); no argument that the trial court was required to submit the case to a jury despite the trial court's grant of summary judgment; and no argument that the trial court was required to order Maple Energy to correct any deficiencies in its petition absent a request from Shah to do so. And as set forth above, Shah's claim that he was not notified of the September hearing is belied by the record and by his own statements in his brief.

12

The six remaining issues are distilled into three categories. In the first is the question of whether the trial court erred in granting summary judgment on Maple Energy's claims for both declaratory relief regarding its right to the reasonable use the surface estate and injunctive relief prohibiting Shah from interfering with that right (issues five, fourteen, fifteen, and second nine). In the second is whether the trial court erred by denying Shah's cross-motion for summary judgment (first issue nine). And in the third is the question of whether the trial court erred in awarding Maple Energy attorney's fees (issues three and four).

## IV. THE TRIAL COURT'S GRANT OF SUMMARY JUDGMENT

### A. Standard of review

We review the grant of summary judgment de novo. *See Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021) (citing *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013)). In a traditional motion for summary judgment, the moving party must demonstrate there are no genuine issues of material fact such that the party is entitled to judgment as a matter of law. *Id.* (citing TEX. R. CIV. P. 166a(c)). When, as here, a plaintiff moves for traditional summary judgment, he bears the burden to conclusively establish it is entitled to judgment as a matter of law on each element of his causes of action, "notwithstanding the nonmovant's response or lack thereof." *Zavala v. Franco*, 622 S.W.3d 612, 618 (Tex. App.—El Paso 2021, pet. denied) (citing *B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 258-59, n.12 (Tex. 2020)). A matter is conclusively established when "reasonable people could not differ in their conclusions. . . ." *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005); *see also Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982) (a matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence)).

When a movant files a traditional motion for summary judgment, the nonmovant has no burden to respond "unless and until" the movant conclusively establishes his cause of action as a

matter of law. *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 514 (Tex. 2022) (citing *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989)); TEX. R. CIV. P. 166a(c). Only after the movant meets this burden will the nonmovant have the burden of "rais[ing] a genuine issue of material fact." *Energen*, 642 S.W.3d at 514 (quoting *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018)). If a movant fails to establish all elements necessary to his cause of action, summary judgment is improper regardless of whether the nonmovant has filed a response. *See Zavala*, 622 S.W.3d at 618.

We review the evidence presented by the parties in a summary judgment proceeding in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant, and resolving any doubts against the motion. *Id.* (citing *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017)).

## B. Applicable law

The Uniform Declaratory Judgments Act (the UDJA) empowers Texas courts "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." *Allstate Ins. Co. v. Irwin*, 627 S.W.3d 263, 269 (Tex. 2021) (citing TEX. CIV. PRAC. & REM. CODE ANN § 37.003(a)). The Act's "purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." *Id*. (citing TEX. CIV. PRAC. & REM. CODE ANN § 37.002(b)). The UDJA requires that there be a "ripe, justiciable controversy" between the parties. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 685 (Tex. 2020). A plaintiff may "present a court with a justiciable controversy when the plaintiff asserts that a live controversy exists and harm will occur if the controversy is left unresolved." *Id.* (citing *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 624 (Tex. 2011) (citation omitted) ("[The UDJA] is intended as a means of determining the parties' rights when a controversy has arisen but before a wrong has been committed . . . .")).

The UDJA also authorizes a party to obtain supplemental ancillary relief, including a permanent injunction, when necessary to enforce a declaratory judgment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.011 ("Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper."); *see also Tanglewood Homes Ass'n, Inc. v. Feldman*, 436 S.W.3d 48, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("Ancillary injunctive relief may be obtained when the evidence establishes that a defendant will not comply with a declaratory judgment." (citing *Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 433 (Tex. App.— Austin 2004, pet. denied))); *Tex. Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 156 (Tex. App.—Austin 1998, no pet.) (interpreting § 37.011 of the UDJA as allowing parties to combine a request for declaratory relief with a request for injunction).

"The granting or denial of a request for a permanent injunction is within the trial court's sound discretion, and a reviewing court's inquiry is limited to the question of whether the trial court abused its discretion" in granting injunctive relief. *Feldman*, 436 S.W.3d at 76 (citing *Lakeside Realty, Inc. v. Life Scape Homeowners Ass'n*, 202 S.W.3d 186, 190 (Tex. App.—Tyler 2005, no pet.) (holding that abuse of discretion is the proper standard of review for an order denying relief under § 37.011); *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 848 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (standard of review for the granting or denial of a permanent injunction is abuse of discretion). Generally, a trial court abuses its discretion when it misinterprets or misapplies the law or acts arbitrarily or unreasonably. *Id*; (citing *Perry Homes v. Cull*, 258 S.W.3d 580, 598 & n. 102 (Tex. 2008); *Downer v. Aquamarine Operations, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

And finally, under the UDJA, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. This provision "entrusts attorney fee awards to the trial court's sound discretion, subject to the

requirements that any fees be reasonable and necessary, which are matters of fact, and to the additional requirement that fees be equitable and just, which are matters of law." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *see also Ridge Oil Co., Inc. v. Guinn Investments, Inc.*, 148 S.W.3d 143, 162-63 (Tex. 2004) (recognizing discretionary nature of attorney fee award under Rule 37.009).

### C. Maple Energy met its initial summary judgment burden

Here, we find that Maple Energy met its initial burden of establishing its right to both declaratory and injunctive relief under the UDJA. First, Maple Energy provided ample evidence to show the parties had a justiciable controversy in the ongoing dispute regarding Maple Energy's right to conduct its oil and gas operations on the Property entitling Maple Energy to seek relief under the UDJA. [7]

Second, Maple Energy provided ample evidence showing it was entitled to a declaratory judgment that it was the owner of the mineral lease on the Property and that it had the concomitant right to the reasonable use of the Property's surface to conduct its oil and gas operations. As chronicled above, Maple Energy provided copies of its purchase agreement in the bankruptcy court demonstrating it purchased the various mineral leases covering 400 acres in Reeves County from MDC Energy, as well as a copy of the Bell Lease itself, which gave Maple Energy's predecessor-in-interest the right to extract minerals from the Property and the "exclusive right" to enter the Property for purposes of conducting oil and gas operations, to include "laying pipelines, storing

---

[7] In his reply brief, Shah contends for the first time that Maple Energy did not have standing to bring a claim for declaratory relief because Maple Energy presented no evidence to establish it suffered a concrete injury. Even if the argument had been presented earlier, and thereby preserved for our review, it lacks merit, because, as explained above, a party may bring a UDJA claim for declaratory relief to resolve a pending controversy without demonstrating harm or wrongdoing has already occurred. *See Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 685 (Tex. 2020) (recognizing that UDJA suits are often brought "with an eye to future harm" prior to any harm actually being suffered (citing *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 713 (1945))). Shah does not dispute the parties were engaged in an actual live controversy when Maple Energy filed its petition.

of, building tanks [and] power stations." In addition, Maple Energy attached copies of the bankruptcy court's orders finding MCD Energy had the right to the reasonable use of Shah's surface estate to conduct its operations pursuant to its mineral leases, which included the right to construct the tank battery and to lay the pipeline network on the Property. And, as both the bankruptcy court and the trial court recognized, it is well-established under Texas law that a mineral lessee, such as Maple Energy, has the right to the reasonable use of the surface estate to conduct its oil and gas operations. *See Lyle v. Midway Solar, LLC*, 618 S.W. 3d 857, 868 (Tex. App.—El Paso 2020, pet. denied) (recognizing that under Texas law, a mineral estate owner "has the right to use the surface to extract minerals, as well as those incidental rights reasonably necessary for the extraction." (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248-49 (Tex. 2013))).

Third and finally, Maple Energy provided ample evidence to support the need to issue a permanent injunction prohibiting Shah from engaging in any action to interfere with Maple Energy's reasonable use of the Property, which included prohibiting Shah from placing locks on the property or offering to sell Maple Energy's equipment to a third party (both of which Shah had done in the past) or erecting a fence around Maple Energy's tank battery. As set forth above, Maple Energy provided evidence Shah had engaged in ongoing and protracted efforts to prohibit it from exercising its right to use the surface estate of the Property, and a permanent injunction was necessary to prevent Shah from continuing such conduct. *See Tanglewood Homes*, 436 S.W.3d at 76 (recognizing trial court's authority to grant injunctive relief under UDJA when evidence establishes a defendant will not comply with a declaratory judgment given his actions in the past).

### D. Whether to regard Shah's cross-motion as a response to Maple Energy's summary judgment motion

Because Maple Energy met its initial burden of establishing its entitlement to both declaratory and injunctive relief under the UDJA, the burden shifted to Shah to present evidence to rebut Maple Energy's claim. *Energen* 642 S.W.3d at 514-15. Shah did not file any pleadings or evidence in response to Maple Energy's motion. However, Shah argues for the first time in his reply brief that the Court should treat his cross-motion for summary judgment as a response to Maple Energy's motion for summary judgment, and that his cross-motion contained sufficient evidence to raise a question of fact regarding Maple Energy's entitlement to relief. We disagree with this argument for several reasons.

Aside from the fact that Shah is improperly raising this argument for the first time in his reply brief, nothing in the record suggests Shah alerted the trial court that he wanted his cross-motion treated as a response to Maple Energy's summary judgment motion. It was Shah's obligation as the nonmovant to "expressly" present his arguments and evidence in response to Maple Energy's summary judgment motion to the trial court in writing, to fairly apprise Maple Energy and the trial court of the issues he believed would defeat the motion. *See Urias v. Owl Springs N., LLC*, 662 S.W.3d 561, 569 (Tex. App.—El Paso 2022, no pet.) (recognizing that pursuant to TEX. R. CIV. P. 166a(c), if a movant establishes it is entitled to summary judgment as a matter of law, the nonmovant must "expressly present to the trial court reasons it avoids summary judgment" (citing *Tello v. Bank One, N.A.*, 218 S.W.3d 109, 119 (Tex. App.—Houston [14th Dist.] 2007, no pet.))). And it is well-established that an appellate court may not consider issues that were not expressly presented to the trial court as grounds for reversal of a trial court's granting summary judgment. *Id.* ("A non-movant who fails to expressly present these reasons in the trial court has waived the issue on appeal." (citing *Home Loan Corp. v. JPMorgan Chase Bank, N.A.*, 312 S.W.3d 199, 205 (Tex. App.—Houston [14th Dist.] 2010, no pet.))). It is clear the trial court did not intend

to treat Shah's cross-motion for summary judgment as a response to Maple Energy's summary judgment motion, as it set the two motions for separate hearings. We must therefore presume the trial court did not consider Shah's cross-motion in its decision to grant Maple Energy's summary judgment motion, and in turn, we may not consider any evidence presented in the cross-motion in reviewing the trial court's decision. *See E.B.S. Enterprises, Inc. v. City of El Paso*, 347 S.W.3d 404, 408 (Tex. App.—El Paso 2011, pet. denied) (absent affirmative showing that trial court considered appellant's late-filed response, appellate court must presume the trial court did not consider it and appellate court may not consider the same on appeal).

Moreover, even if we were to overlook these procedural deficiencies, Shah presented no evidence in the cross-motion to contradict Maple Energy's evidence that it owned the mineral lease on the Property and that it had the right to the reasonable use of the surface estate pursuant to the lease.

### E. Shah's claim that the tank battery was Maple Energy's personal property

Shah next appears to be asserting that Maple Energy does not have a gas well on the Property, and he asserts that Maple Energy therefore is not using the Property to conduct oil and gas operations, i.e., to extract minerals. Instead, Shah contends Maple Energy is using his surface estate as a "wholesale" storage facility for its tank battery and other equipment, which he characterizes as Maple Energy's "personal property." And, in turn, Shah contends Maple Energy had no right to store personal property on his surface estate without his permission.

To support his argument, Shah cites various Texas and federal cases that stand for the proposition that "oil and gas are realty when in place and personalty when severed from the land by production." *See, e.g., Phillips Petroleum Co. v. Adam*s, 513 F. 2d 355, 363 (5th Cir. 1975); *Colorado Interstate Gas Co. v. Hunt Energy Corp.*, 47 S.W.3d. 1, 10 ( Tex. App.—Amarillo 2000). Those cases, however, regarded disputes over who owned the rights to oil and gas after it was

brought to the surface under the parties' various leases and assignments. None of the cases Shah cited addressed the question of whether a mineral lessee has the right to construct storage facilities on a surface estate in furtherance of its mineral operations.[8] And as set forth above, not only did the Bell Lease give Maple Energy's predecessor-in-interest the right to construct storage facilities on the surface estate, but under Texas law, an oil and gas lessee generally has the right to construct permanent fixtures, including storage tanks, it deems necessary to facilitate its operations. *See Harrison v. Rosetta Res. Operating, LP*, 564 S.W.3d 68, 75 (Tex. App.—El Paso 2018, no pet.) (recognizing that a mineral lessee's right to use the surface estate may include both the laying of pipeline and the construction of storage tanks the mineral owner believes are necessary to its operations); *see also Ottis v. Haas*, 569 S.W.2d 508, 513 (Tex. App.—Corpus Christi 1978, writ ref'd n.r.e.) (recognizing that tank batteries are a necessary incident of oil and gas production).

Moreover, Shah presented no evidence indicating Maple Energy was not in fact extracting minerals from the Property or that it was not using the Property to further its production of minerals on pooled tracts of land within its 400 acres of mineral leases in the area. *See generally Key Operating & Equip., Inc. v. Hegar*, 435 S.W.3d 794, 798 (Tex. 2014) (recognizing that because an oil and gas operator's production from a tract pooled with others is legally treated as production from each tract within the unit, the operator has the right to use the surface of any of the units' pooled tracts in its production activities). Accordingly, we conclude the record does not support Shah's claim that Maple Energy was improperly using his surface estate to store its personal property.

---

[8] Shah also relies on *Humble Oil & Ref. Co. v. West*, 508 S.W.2d 812 (Tex. 1974) for the proposition that Maple Energy's facilities were its "personal property," which it had no right to store on his property. However, in *Humble Oil*, the issue was not whether the oil and gas operator had the right to construct and maintain a storage reservoir on the surface estate of the plaintiff's property (the court assumed the operator had that right), but whether various mineral interest owners were entitled to a royalty payment on gas that was stored in a reservoir on the property but not produced from the subject property. *Id*. at 815, 819. Accordingly, *Humble Oil* does not support Shah's position that Maple Energy had no right to maintain its storage facilities on the Property.

### F. Whether the trial court should have addressed the accommodation doctrine

In his reply brief, Shah also contends that regardless of whether the trial court properly found Maple Energy had the right to the reasonable use of the surface estate, the trial court erred by failing to address Shah's respective right to use the Property under the "accommodation doctrine." Shah points out that Maple Energy's own exhibits contained evidence showing Shah had either signed agreements with renewable energy providers to use the Property or intended to contract with solar energy companies to install a solar energy farm on the Property in the future.[9] Shah argues this evidence entitled him to a ruling on whether the "accommodation doctrine" allowed him to pursue his intent to use the Property in this manner.

It is true that an oil and gas operator's right to use the surface estate for its operations may be limited by the "accommodation doctrine," which provides that "mineral and surface estates must exercise their respective rights with due regard for the other's." *See Lyle*, 618 S.W. 3d at 869. And courts are often asked to use this doctrine to balance the relative rights of mineral estate owners and surface estate owners to resolve conflicts between them. However, it is a surface estate owner's burden to raise this issue at the trial court level and present evidence to show he is entitled to relief under this doctrine. *Id.* (recognizing surface owners carry the burden to show the mineral owner's use of the surface completely precludes or substantially impairs the surface owner's existing use and no reasonable alternative is available to surface owner by which existing use can be continued). But Shah never raised the accommodation doctrine in the trial court and never asked the court to make a ruling on his rights under the doctrine. Accordingly, this issue was not preserved for our review. *See* TEX. R. APP. P. 33.1(a) (as a prerequisite to presenting a complaint for appellate review, the record must show "the complaint was made to the trial court by a timely

---

[9] In its summary judgment motion, Maple Energy attached correspondence in which Shah notified Maple Energy he intended to negotiate with a solar energy company to install a solar energy farm on the Property. And in his cross-motion, Shah provided a signed copy of the August 2021 "Renewable Energy Storage Lease."

request, objection, or motion"); *see also State v. Brown*, 262 S.W.3d 365, 370 (Tex. 2008) ("A party generally is not entitled to relief it does not seek.").

## G. Whether the trial court should have addressed the gas flaring operations

In a similar vein, Shah also complains of the trial court's failure to address whether Maple Energy was conducting illegal and unpermitted gas flaring operations on the Property, and Shah contends this failure allows Maple Energy to continue to "flare" harmful gas to the detriment of his health, the neighbor's health, and the environment.[10] Although in his cross-motion for summary judgment Shah requested that Maple Energy be required to "dismantle" and remove the gas flaring operations from the Property—an issue we address next—he did not ask the trial court to make a finding in its declaratory judgment regarding Maple Energy's right to conduct any such operation, either before or after the trial court issued its final judgment. Accordingly, we conclude Shah did not preserve this issue for our review.

## H. Whether the final judgment was overly broad

In addition, Shah appears to be challenging the breadth of trial court's judgment, contending that (1) it gave Maple Energy the unfettered right to undertake actions on the Property without regard for compensating Shah for any possible resulting surface damages, and (2) it precluded Shah from entering the Property and/or from pursuing any of his intended activities on the Property.[11] Shah's arguments mischaracterize the trial court's order. As set forth above, the trial court's judgment only gave Maple Energy the right to use the surface estate "as is reasonably

---

[10] Shah also finds it significant that the bankruptcy court did not expressly address whether Maple Energy was authorized to conduct such activities on the Property. However, the trial court did not base its decision to grant Maple Energy's claim for declaratory relief solely on the bankruptcy court's order; instead, the trial court made an independent finding that Shah was entitled under Texas law to the "right to use the surface estate in connection with oil and gas operations and the right of ingress and egress with respect to the surface estate in connection therewith."

[11] In his reply brief, Shah also argues the injunction was not "necessary" or "just," but he provides no support of this contention. And as set forth above, Maple Energy provided ample evidence to support a finding that injunction was both necessary and proper based on Shah's past activities.

22

necessary to the purpose of conducting operations reasonably necessary for producing oil, gas, and other minerals." It did not give Maple Energy unfettered use of the surface estate, nor did it take away any right Shah might have to seek compensation for damages caused to the surface estate itself. In addition, the judgment did not prohibit Shah from entering the Property for legitimate purposes. Instead, the judgment only prohibited Shah from interfering with Maple Energy's reasonable use of the Property and expressly enjoined him from (1) engaging in wrongful acts to prevent Maple Energy from entering the Property (such as placing locks on the Property), and (2) offering Maple Energy's equipment for sale as he had done before.[12] We therefore do not find the trial court's judgment to be overly broad.

Accordingly, for all the reasons set forth above, we conclude the trial court did not err in granting Maple Energy's summary judgment motion on its claims for a declaratory judgment and a permanent injunction.

Shah's issues five, fourteen, fifteen, and second issue nine are overruled.

## V.  SHAH'S CROSS-MOTION FOR SUMMARY JUDGMENT

In his first issue nine, Shah contends the trial court erred by denying his cross-motion for summary judgment in which he sought a three million dollar "payment" from Maple Energy for use of his surface estate and an order requiring Maple Energy to dismantle its alleged gas flaring operations on the Property. Although in his appellant's brief Shah primarily complained the trial court erred by denying the motion without notice and a hearing, in his reply brief, he contends the trial court abused its discretion by failing to grant the cross-motion.[13] He therefore asks this Court

---

[12] We further note that Maple Energy made it clear in its pleadings that it only sought the limited right to use the property for its mineral operations, and both MDC and Maple Energy made it clear in their communications with Shah that they were not seeking to prohibit Shah from exercising any other legitimate rights it might have pursuant to his status as the surface owner.

[13] As set forth above, Shah's claim that he was not notified of the September hearing is belied by both the record and his own statements in his brief.

to enter an order directing Maple Energy to pay him the three million dollars requested and to "disable, dismantle and remove" its gas flaring operations from the Property as requested in his cross-motion.

Shah's cross-motion for summary judgment, however, did not seek any relief the trial court was authorized to order. As set forth above, a plaintiff moving for summary judgment bears the burden to conclusively establish he is entitled to judgment as a matter of law on each element of his causes of action. *Zavala*, 622 S.W.3d at 618 (citing *B.C.*, 598 S.W.3d at 258-59, n.12). Accordingly, the "motion must identify or address the cause of action . . . and its elements" upon which the movant seeks summary judgment. *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex. 1990). And as the Texas Supreme Court has recognized, "If the grounds for summary judgment are not expressly presented in the motion for summary judgment itself, the motion is legally insufficient as a matter of law." *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993). Here, Shah never filed a counterclaim against Maple Energy and therefore never brought any claims against Maple Energy on which the trial court could have ordered summary judgment.[14] Accordingly, the trial court properly denied Shah's cross-motion for summary judgment. *See Stillwell v. Stevenson*, 668 S.W.3d 844, 853 (Tex. App.—El Paso 2023, pet. denied) (finding trial court erred by granting party's summary judgment motion where the party failed to identify any cause of action upon which the motion was based (citing *E.B.S. Enters., Inc*, 347 S.W.3d at 409 )).

Shah's first issue nine is overruled.

---

[14] Moreover, although Maple Energy pointed out this procedural defect in its response to the cross-motion for summary judgment, Shah did not attempt to file a counterclaim to remedy the defect.

## VI. THE ATTORNEY'S FEES AWARDS

As set forth above, the trial court issued two separate attorney fee awards to Maple Energy. The trial court then combined the two awards into a money judgment totaling $95,154.50. In issues three and four, Shah challenges both fee awards based on his belief that Maple Energy's attorney engaged in wrongful billing practices, and he separately challenges the trial court's authority to award attorney's fees under Rule 91a, contending the trial court improperly classified his motion to dismiss as falling within the scope of that rule.

### A. Allegations of wrongful billing

Shah's allegation of wrongful billing practices is based on his belief that Maple Energy's lead attorney, John Turner, wrongfully billed time for two non-Texas-licensed attorneys in his firm, accusing them of the unlawful practice of law. And he contends that we should therefore "void" the trial court's money judgment awarding Maple Energy its fees on that basis. We disagree.

Turner filed two separate affidavits in the trial court to support his request for attorney's fees. In his first affidavit, he averred that he and other attorneys and legal staff in his firm, including his partner, Patricia Kipnis, who was also familiar with the New Jersey litigation, spent a total of 14.7 hours responding to Shah's motion to dismiss. Based on a discounted billing rate, Turner averred that he billed Maple Energy $9,738 for the firm's services in that endeavor. And Turner presented the firm's billing records demonstrating that Kipnis—who was admittedly not licensed in Texas—had consulted with him on the motion to dismiss and assisted with editing the response.

In his second affidavit, which pertained to the UDJA-based attorney's fees award, Turner separated the tasks that he and the firm's other attorneys and legal staff performed in the Texas litigation into the following five categories: "(1) Preparing and filing the Original Petition; (2) Preparing the Motion for Summary Judgment; (3) Preparing for and attending the summary

25

judgment hearing; (4) Filing a Motion to Dismiss the appeal of this Court's Order Awarding Attorneys' Fees dated July 5, 2022 (the "Attorneys' Fee Order"); and (5) Responding to filings made by Mr. Shah in the Litigation."[15] Turner averred that the firm billed a total of 133.20 hours of time in pursuing the litigation (aside from opposing the motion to dismiss) and based on a discounted billing rate, the firm billed Maple Energy $85,416.50 for its services. The billing records reflect that once again Kipnis, as well as an associate in the firm, Elliott McGraw, who was not Texas-licensed, consulted with Turner on litigation matters and assisted him with reviewing and editing pleadings.

As he did in his motion for sanctions against Maple Energy in the trial court, Shah contends on appeal that these charges show Kipnis and McGraw were engaged in the unauthorized practice of law, thereby rendering the firm's billing records fraudulent. Shah fails to cite to any authority indicating that their actions constituted the unauthorized practice of law. Texas Government Code Section 81.101 defines the "practice of law" as the "preparation of a pleading or other document incident to an action or special proceeding or the management of the action or proceeding on behalf of a client before a judge in court as well as a service rendered out of court, including the giving of advice or the rendering of any service requiring the use of legal skill or knowledge, such as preparing a will, contract, or other instrument, the legal effect of which under the facts and conclusions involved must be carefully determined." TEX. GOV'T CODE ANN. § 81.101(a). Shah points to nothing in the record to suggest that Kipnis or McGraw engaged in any activities that would constitute the unauthorized practice of law in Texas under this provision. Neither the billing charges for Kipnis and McGraw nor anything else in the record suggests either attorney made an appearance in any Texas court or signed or filed any pleadings in the Texas litigation.

---

[15] Turner did not include any of the work performed in responding to Shah's motion to dismiss for which the firm had already received fees.

Accordingly, we reject Shah's contention that the billing records reflect unethical or illegal conduct, and we therefore decline Shah's request to void either attorney's fees award on this basis.

## B. Rule 91a-based attorney's fees

In addition to the improper billing argument, Shah maintains that the Rule 91a attorney's fees award to Maple Energy was in error because Shah's motion to dismiss did not fall within the purview of Rule 91a. We agree.

### (1) *Applicable law*

Rule 91a provides that (with exceptions not applicable here) "a party may move to dismiss a cause of action on the grounds that it has no basis in law or fact." TEX. R. CIV. P. 91a.1. It further provides "[a] cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought [and that a] cause of action has no basis in fact if no reasonable person could believe the facts pleaded." *Id.* Under this rule, a "motion to dismiss must state that it is made pursuant to this rule, must identify each cause of action to which it is addressed, and must state specifically the reasons the cause of action has no basis in law, no basis in fact, or both." TEX. R. CIV. P. 91a.2. In addition, Rule 91a.6 expressly provides that a 91a motion to dismiss must be based solely on the pleadings (except in limited situations not at issue here) as the only question before the trial court in such a motion is whether the cause of action, as pleaded, fails to state a valid claim. *See* TEX. R. CIV. P. 91a.6 ("[e]xcept as required by 91a.7 (to establish entitlement to attorney fees), the court may not consider evidence in ruling on the motion and must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59"[16]); *see also In re*

---

[16] Rule 59 provides: "Notes, accounts, bonds, mortgages, records, and all other written instruments, constituting, in whole or in part, the claim sued on, or the matter set up in defense, may be made a part of the pleadings by copies thereof, or the originals, being attached or filed and referred to as such, or by copying the same in the body of the pleading in aid and explanation of the allegations in the petition or answer made in reference to said instruments and shall be deemed a part thereof for all purposes. Such pleadings shall not be deemed defective because of the lack of

*Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021) (recognizing that in "ruling on a Rule 91a motion to dismiss, a court may not consider evidence but "must decide the motion based solely on the pleading of the cause of action, together with any [permitted] pleading exhibits"). And significant to this appeal, the Rule 91a provides (with exceptions not applicable here) a "court may award the prevailing party on the motion all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court." TEX. R. CIV. P. 91a.7.

### (2) *Standard of review*

The answer to the question of whether the trial court properly awarded attorney's fees pursuant to Rule 91a.7 turns solely on whether the trial court properly categorized Shah's motion to dismiss as a Rule 91a motion. And we consider this a question of law we review de novo. *See Thuesen v. Amerisure Ins. Co.*, 487 S.W.3d 291, 300 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (appellate court will review a trial court's interpretation of Rule 91a de novo (citing *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655–56 (Tex. 1989))); *Thomas v. Olympus/Nelson Prop. Mgmt.*, 148 S.W.3d 395, 399 (Tex. App.—Houston [14th Dist.] 2004, no pet.)).

### (3) *Analysis*

As set forth above, Shah filed his motion to dismiss at the start of the litigation, raising the following grounds: (1) Maple Energy's claims were the same as those that pending in the New Jersey district court; (2) Maple Energy was not a "real party in interest" and lacked "standing" to bring the suit; (3) Shah was not properly served with the lawsuit; (4) Maple Energy's petition was "vague" and "hard to read"; and (5) Maple Energy's claims were "barred by the Rooker-Feldman Doctrine." Maple Energy responded by pointing out it had already moved to dismiss the pending

---

any allegations which can be supplied from said exhibit. No other instrument of writing shall be made an exhibit in the pleading." TEX. R. CIV. P. 59.

28

lawsuit in New Jersey; Maple Energy held the mineral leases under which it sought a judgment in the Texas litigation and was therefore the real party in interest with standing to request declaratory relief; Shah had been properly served; Shah had only identified a handful of pages in the exhibits to Maple Energy's petition that were blurred, which Maple Energy offered to recopy for him; and the Rooker-Feldman Doctrine did not apply to the case.[17] Maple Energy produced five exhibits in support of its position that the motion should be denied.

Maple Energy further argued that Shah's motion failed to meet the procedural requirements for filing a Rule 91a motion, as Rule 91a.2 expressly requires the moving party to identify the motion as a Rule 91a motion, identify the cause of action to which it is addressed, and specifically state the reasons the movant believes the cause of action has "no basis in law, no basis in fact, or both." Despite acknowledging that Shah's motion "fail[ed] miserably" in meeting any of these requirements, Maple Energy argued it was entitled to an award of attorney's fees as the prevailing party under Rule 91a.7. Maple Energy made the same argument at the hearing on Shah's motion, contending the trial court should deny the motion because it did not meet the Rule 91a motion requirements yet requesting attorney's fees under the same rule.

On appeal, Shah utilizes the same argument in support of his contention that the trial court erred by treating his motion as coming within the scope of Rule 91a and by awarding attorney's fees under that rule.[18] We agree the motion did not state that it was filed under Rule 91a and did not contend that Maple Energy's claims had no basis in law or fact, as Rule 91a.2 requires. Nor

---

[17] Under the Rooker–Feldman doctrine, as courts of original jurisdiction, federal district courts lack jurisdiction to review, modify, or nullify final orders of state courts. *Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir.1994); *see also Fluor Daniel, Inc. v. H.B. Zachry Co., Inc.*, 1 S.W.3d 166, 168 (Tex. App.—Corpus Christi–Edinburg 1999, pet. denied) (recognizing same).

[18] In his appellant's brief, Shah does not contend the trial court erred in denying the motion itself, but in his reply brief, he contends the trial court should have dismissed Maple Energy's lawsuit because he believes Riverstone Credit Group was the real party in interest and Maple Energy was merely a "passthrough" entity "without any assets" and therefore could not legally bring the lawsuit. Shah does not, however, cite any authority for this proposition or point to any evidence in the record to support his claim. We therefore decline to address this issue.

did Maple Energy treat the motion as a Rule 91a motion, given its reliance on evidence to rebut the various grounds for dismissal. In addition, Shah filed his own exhibits in his reply in support of his motion and referred to the exhibits repeatedly during the trial court's hearing on the motion without objection. Accordingly, it appears even Maple Energy recognized the need for evidence to address the issues Shah raised in his motion to dismiss, which removes the motion from the 91a realm—the realm of resolving the motion solely on the pleadings. *See Renate Nixdorf GmbH & Co. KG v. TRA Midland Properties, LLC*, No. 05-17-00577-CV, 2019 WL 92038, at *9 (Tex. App.—Dallas Jan. 3, 2019, pet. denied) (mem. op.) (reversing an order granting a Rule 91a motion based on limitations because court could not determine from the face of the plaintiff's pleading when limitations foreclosed the claims (citing *AC Interests, L.P. v. Tex. Comm'n on Envt'l Quality*, 543 S.W.3d 703, 706 (Tex. 2018))).

Maple Energy nevertheless contends we must treat the motion as a Rule 91a motion, asserting that Rule 91a is "the only mechanism under the Texas Rules to dismiss a cause of action." While Maple Energy is correct that before Rule 91a was adopted, there were no specific Texas Rules of Civil Procedure allowing for the dismissal of *baseless* lawsuits, other mechanisms existed—and continue to exist—for dismissing lawsuits for other reasons. *See, .e.g., In re Shire PLC*, 633 S.W.3d 1, 11 (Tex. App.—Texarkana 2021, no pet.). In fact, Rule 91a.9 expressly states that "[t]his rule is in addition to, and does not supersede or affect, other procedures that authorize dismissal." TEX. R. CIV. P. 91a.9. Accordingly, a party may still move for dismissal using other mechanisms, such as by filing a motion for summary judgment or a plea to the jurisdiction. *In re Shire PLC*, 633 S.W.3d at 20 (recognizing Rule 91a left other procedural mechanisms in place for seeking dismissal of a lawsuit, including filing a summary judgment motion); *Dallas Cnty. Republican Party v. Dallas Cnty. Democratic Party*, No. 05-18-00916-CV, 2019 WL 4010776, at *3–4 (Tex. App.—Dallas Aug. 26, 2019, pet. denied) (mem. op.) (recognizing that a party may

seek dismissal of a lawsuit based on standing and mootness by other vehicles, including a plea to the jurisdiction or motion for summary judgment (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000))); *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004)). Importantly, a court should "look to the substance of a motion to determine the relief sought, not merely to its title" in determining its effect. *Dallas Cnty. Republican Party*, 2019 WL 4010776 at *4 (citing *Surgitek, Bristol–Myers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999)); *see also Specialty Associates of W. Houston, PLLC v. Adams*, No. 01-21-00092-CV, 2022 WL 3452329, at *4 (Tex. App.—Houston [1st Dist.] Aug. 18, 2022, pet. ref'd) (mem. op) (finding that defendant's "Rule 91a motion . . . used to challenge the trial court's subject-matter jurisdiction . . . effectively constitute[d] a plea to the jurisdiction" and would be analyzed as such (citing *City of Austin v. Liberty Mut. Ins.*, 431 S.W.3d 817, 822 n.1 (Tex. App.—Austin 2014, no pet.))).

And when, as here, a party's motion or pleading cannot be considered a Rule 91a motion to dismiss, a trial court may not award attorney's fees to the prevailing party under that rule. *See, e.g., Lexington v. Treece*, No. 01-17-00228-CV, 2021 WL 2931354, at *14–15 (Tex. App.—Houston [1st Dist.] July 13, 2021, pet. denied) (mem. op.) (court erred in treating defendant's motion as a Rule 91a motion to dismiss for purposes of awarding attorney's fees where it was based on court's lack of subject matter jurisdiction); *Dallas Cnty. Republican Party*, 2019 WL 4010776, at *4-5 (where the vehicle used to seek dismissal is not Rule 91a, the trial court has no authority to award attorney's fees under that rule when denying the request for dismissal (citing *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 120 (Tex. 2009))). Accordingly, because we conclude that the trial court erred as a matter of law in treating Shah's motion to dismiss as a Rule 91a motion, we conclude that it erred in awarding attorney's fees under that rule.

Shah's issues three and four are sustained to the extent that he seeks reversal of the Rule 91a attorney's fee's award.

## C. Remittitur under Rule 46.3

Maple Energy points out that although the trial court made its attorney's fees awards in separate orders, ordering Shah to pay Maple Energy's attorneys $9,738.00 pursuant to Rule 91a and $85,416.50 pursuant to the UDJA, the court combined them into a total money judgment of $95,154.50. And Maple Energy appears to be arguing the trial court could have considered the total amount an equitable and just attorney's fees award under the UDJA, as all of the fees in both of Turner's billing records were accrued in the course of prosecuting the UDJA litigation. The problem with this argument is that the trial court was not given the opportunity to consider whether it believed a total award of $95,154.50 in attorney's fees would be "equitable and just" under the UDJA, given its prior decision to award a portion of the fees under Rule 91a. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (giving the trial court the authority to award reasonable and necessary attorney's fees upon a finding that such an award is "equitable and just"). And given the discretionary nature of UDJA fee awards, we cannot speculate as to what the trial court may have done had it been given that opportunity. *See Ridge Oil Co.*, 148 S.W.3d at 162-63 (recognizing the discretionary nature of attorney's fees awards under Rule 37.009).

As reversing and remanding the trial court's money judgment for the court to make a new ruling on the proper amount of attorney's fees under the UDJA is not the most expedient way to resolve this issue, we instead suggest a remittitur lowering the amount of the money judgment by $9,738.00—the amount of the Rule 91a-based attorney's fees award.

This court possesses the inherent power in a civil case to suggest a remittitur Texas Rule of Appellate Procedure 46.3 when it agrees with an appellant that a portion of a money judgment is not supported by the record, but when it finds there is sufficient evidence to support a lesser

award. *See Moore v. Amarillo-Panhandle Humane Soc'y, Inc.*, No. 07-16-00300-CV, 2018 WL 618736, at \*3 (Tex. App.—Amarillo Jan. 25, 2018, no pet.) (suggesting a remittitur when there was sufficient evidence to support an award of attorney's fees "but not in the amount given, and because a re-trial is not the most expedient way to resolve this discrepancy"); *see also Baeza v. Hector's Tire & Wrecker Serv., Inc.*, 471 S.W.3d 585, 599–600 (Tex. App.—El Paso 2015, no pet.) (suggesting a remittitur when the amount of the trial court's award of damages was not supported by the evidence presented at trial but where there was sufficient evidence in the record to support a lesser award); *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 877–78, 880 (Tex. 2010) (holding there was "legally sufficient evidence to prove a lesser, ascertainable amount of lost profits with reasonable certainty" and remanding case to court of appeals to consider suggestion of remittitur).

As set forth above, the record supports the trial court's proper award of UDJA-based attorney's fees in the amount of $85,416.50, and we therefore give Maple Energy 15 days from the issuance of this opinion to agree to accept a remittitur in the amount of $9,738.00, representing the amount of attorney's fees improperly awarded. If Maple Energy files a timely and written acceptance of remittitur in this Court, we will reform the trial court's judgment to reflect a total money judgment of $85,416.50 and affirm the judgment as reformed. If not, the trial court's money judgment will be reversed, and we will remand the matter for a new hearing on the issue of the proper amount of attorney's fees under the UDJA.

## VII. MAPLE ENERGY'S REQUEST FOR SANCTIONS FOR FRIVOLOUS APPEAL

Finally, Maple Energy seeks sanctions against Shah, pursuant to Texas Rules of Appellate Procedure Rule 45, for filing a frivolous appeal. Rule 45 provides: "If the court of appeals determines that an appeal is frivolous, it may—on motion of any party or on its own initiative, after notice and a reasonable opportunity for response—award each prevailing party just

damages." TEX. R. APP. P. 45. Maple Energy contends we should find that Shah filed a frivolous appeal and impose sanctions because none of the issues Shah raised on appeal had any merit, his arguments were frivolous and unsupported by facts or law, and many of his issues were subject to briefing waiver because they were so poorly briefed. Maple Energy further contends this is not the first time Shah has "engaged in abusive litigation tactics" by making false and unsupported statements and arguments, and his ongoing dilatory and inappropriate actions should be punished.

An appeal is frivolous when the record, viewed from the perspective of the advocate, "does not provide reasonable grounds for the advocate to believe that the case could be reversed." *Meraz v. Booker*, No. 08-22-00116-CV, 2022 WL 3010077, at *1 (Tex. App.—El Paso July 29, 2022, no pet.) (mem. op.) (citing *Ortiz v. St. Teresa Nursing & Rehabilitation Center, LLC*, 579 S.W.3d 696, 708 (Tex. App.—El Paso 2019, pet. denied)). Whether to grant sanctions for filing a frivolous appeal is within the Court's discretion. *Id.* And we only grant sanctions "in truly egregious circumstances." *McCullough v. Scarbrough, Medlin, & Associates Inc.*, No. 08-12-00205-CV, 2012 WL 3100845, at *1 (Tex. App.—El Paso July 31, 2012, no pet.) (mem. op.).

While Shah has raised many frivolous issues both in the trial court and on appeal, the circumstances of which are egregious, he did raise a meritorious issue regarding Rule 91a attorney's fees. For that reason alone, we decline Maple Energy's request for a Rule 45 damages award.[19]

## VIII. CONCLUSION

We affirm the trial court's judgment granting Maple Energy's claims for both declaratory and injunctive relief. However, because we conclude that the trial court improperly awarded Maple

---

[19] In his reply brief, Shah contends Maple Energy—or more particularly Maple Energy's attorney—should be sanctioned, for engaging in inappropriate and unethical conduct in the submission of his billing records. However, as set forth above, we find no impropriety in Turner's billing records, and therefore, no basis to impose sanctions on Turner or Maple Energy.

Energy a money judgment in the amount of $95,154.50, we reverse the trial court's judgment with respect to the money judgment and remand for a hearing on the issue of the proper amount of damages to be awarded. If, however, Maple Energy timely files a remittitur with this Court in the amount of $9,738.00 within 15 days of the date this opinion is issued, the judgment will be reformed to reflect a damages award of $85,416.50 and affirmed in all other respects.


LISA J. SOTO, Justice

July 31, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.